STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. LEONARD COSTA, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted April 14, 1952—Decided May 29, 1952.

Before Judges McGeehan, Jayne and Goldmann.

*Mr. Joseph A. Murphy,* Assistant Deputy Attorney-General, argued the cause for the respondent (*Mr. Theodore D. Parsons,* Attorney-General; *Mr. Thomas P. Cook,* Deputy Attorney-General, on the brief).

*Mr. Martin J. DiMaria* argued the cause for the appellant.

The opinion of the court was delivered by

Goldmann, J. A. D.   Defendant was tried in the Bergen County Court on an indictment charging that he did on

divers dates from January 24 to March 31, 1949, "willfully, knowingly and unlawfully keep a certain place known as Costa's Barn, or Costa's Garage" in the Borough of Lodi with intent "that persons might and should resort thither for the purpose of gambling with dice," in violation of *R. S.* 2:135–3. He did not take the stand or offer any witnesses in his defense. The jury returned a verdict of guilty. The court thereafter sentenced defendant to State Prison for a term of 18 to 24 months and fined him $3,500.

Defendant appeals and argues eight grounds for reversal, among them that the trial court erred in denying his motion for judgment of acquittal at the close of the State's case and again at the close of the entire case.

There was proof that defendant had control of the alleged gambling place. His father owned the property and built the garage thereon; he testified that he had turned the building over to defendant for use as a garage and repair shop. Defendant's brother also testified that during the period covered by the indictment defendant operated the garage and used it for repairing cars.

Intent is an essential ingredient of the crime here charged and an ultimate requirement of the proof necessary to support the indictment. *State v. Clark,* 137 *N. J. L.* 10 (*Sup. Ct.* 1948). In construing *L.* 1894, *c.* 101, *sec.* 2 (*Gen. Stat., p.* 1102), which is the source of our present law, the court in *State v. Ackerman,* 62 *N. J. L.* 456, 458 (*Sup. Ct.* 1898), said that the words of the 1894 act

"do not import the keeping of a place to which it is *possible* for persons to resort for betting, nor the keeping of a place to which persons *do in fact* resort for betting. Their fair import is the keeping of a place with *the intent* that persons shall resort thither for betting."

We have no "congeries of proofs" (*State v. Clark,* above) which would permit of an inference that the garage in question was a place maintained by the defendant with intent that people should resort there for gambling. For example,

we have none of the setting, character of preparations, nature of arrangements, or paraphernalia for gambling present in the *Clark* case. Equally lacking is any evidence that the defendant was at or near the garage during the alleged gambling operations.

The State having failed to establish a case against defendant, the trial court erred in denying his motion for judgment of acquittal made at the close of the State's case and again at the close of the entire case. Although this is dispositive of the appeal, two of the remaining grounds advanced by defendant deserve consideration.

In commenting upon defendant's failure to take the stand, the trial court charged that "where facts concerning the acts of the defendant are testified to which tend to prove his guilt and he, by his oath, can deny them, his failure to testify in his own behalf raises a strong presumption that he cannot truthfully deny those facts." Defendant properly objected to this portion of the charge.

There was a similar charge made in *State v. Friedman*, 136 *N. J. L.* 527 (*E. & A.* 1948). In reversing the judgment of conviction the court said (at *page* 531):

"The charge as given in this case has had the approval of this court only where there was direct proof of particular guilty or inculpatory acts which the defendant could specifically deny or contradict, if they were untrue, by taking the stand as a witness. * * *

But there is a distinction between that situation and one when the evidence is merely circumstantial from which the jury may draw an inference of the defendant's guilt of the charge. The defendant could only meet such a possible inference by a general denial of the charge. This he does not have to do and therefore he cannot be criticised for such refusal. It is only when there is proof that he has specific knowledge of facts directly charging and making out his guilt that he is so criticisable, and under such circumstances the proper charge is that where facts are testified to concerning the acts of the defendant which would be conclusive of his guilt and which he could, under oath, deny and controvert, his failure to testify in his own behalf raises a strong presumption that he could not deny those facts. * * *"

*State v. Anderson*, 137 *N. J. L.* 6, 7 (*Sup. Ct.* 1948).

■ The charge was prejudicial error. The State presented no direct proof that defendant had specific knowledge of facts directly charging and making out his guilt. There was no proof of facts concerning his acts which would be conclusive of his guilt and which he could, under oath, deny and controvert.

The State presented as its witnesses Doto, Lynch, Longano, Moretti and Guarini (the "Big Five"), each of whom had only six months before pleaded *non vult* to an indictment charging him with keeping a certain place known as Costa's Barn, or Costa's Garage, in Lodi between January 24 and March 31, 1949, with intent that persons might and should resort thither for the purpose of gambling with dice, in violation of *R. S.* 2:135–3. The language of the several indictments is, except for the name of the person charged, identical with that of the indictment on which defendant was tried.

As each of these witnesses took the stand he was at once asked if he had not been under indictment in May, 1951, and pleaded *non vult* thereto. The question put used the essential language of the indictment relating to the particular witness. The court permitted the question to be answered over the vigorous objection of counsel for the defense. The State had argued that the question was entirely proper, its purpose being to bring out initially the fact that the witness had been convicted of crime, and so aid the jury in weighing his testimony.

■ There was no error in allowing such question to be asked at the outset. *State v. Fox,* 12 *N. J. Super.* 132 (*App. Div.* 1951). But there was error in permitting the testimony to remain in the case and go to the jury. The court charged that the jury might consider the indictments and the pleas thereto, but "only as they may affect the credibility of those individuals concerned therein, who appeared and testified * * *." The plain fact is that the State produced no evidence by any one of these witnesses which in any way supported the charge made against the defendant. There

was, therefore, no other testimony from any of them for the jury to weigh, implicating the defendant in the crime with which he was charged.

These witnesses followed each other across the witness stand in rapid sequence. The question about the indictment was asked and answered. The witness stepped down and the next one took his place. All this was done under the guise of giving the jury the criminal record of the witness so that it might gauge the credibility of his testimony. Counsel for the State must have known that by this studied process he was inferentially introducing in the minds of the jury the fact that the defendant was involved in the same gambling operation as the "Big Five" and so was guilty of the crime for which he was standing trial.

There was error in allowing the several indictments against the five men, and the notations thereon, to be received and marked in evidence. This was done after the State had rested and after the court had denied defendant's motion for judgment of acquittal. Here again counsel for the State argued, and the court agreed, that it was proper to receive the indictments in evidence so that the jury might "evaluate the value of their [the five men's] testimony and give it whatever credit they determine to give." The argument was specious. It has already been observed that there was no testimony whatever by any of these five witnesses touching the defendant or the charge made against him, which the jury was called upon to weigh as to credibility. What counsel for the State did in this aspect of the case was manifestly prejudicial to the defendant and should not have been sanctioned.

The judgment of conviction is reversed.