MARY FLANAGAN, ALSO KNOWN AS MARY FLANNEGAN, PLAINTIFF-APPELLANT, v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, A CORPORATION, DEFENDANT-RESPONDENT.

Argued November 30, 1953—Decided January 11, 1954.

*Mr. John T. Keefe* argued the cause for appellant.

*Mr. Arthur J. Blake* argued the cause for respondent (*Messrs. Emory, Langan & Lamb,* attorneys).

The opinion of the court was delivered by

WACHENFELD, J. The respondent, the Equitable Life Assurance Society of the United States, issued a policy of insurance on the life of Konstanten Zarecky in the sum of $3,000, wherein the appellant was named as beneficiary. Amongst other things, it provided that in the event the

insured met his death "directly and exclusively by external, violent and purely accidental means," the company would pay an additional $3,000.

The contract further stipulated that no payment would be made for the additional amount "for any loss resulting from * * * self-destruction or self-inflicted injury."

On November 29, 1951, while the policy was in effect, the assured was struck and killed by a train on the Pennsylvania Railroad at Howe Lane, North Brunswick Township.

The appellant sought the amount of the policy and an equal amount as additional double indemnity. The insurer paid the face amount of the contract but refused double indemnity, asserting the assured's death was not accidental but suicidal.

The deceased worked at the Mack Manufacturing Company doing heavy work in the casting department. After the death of his first wife he remarried, but shortly separated from his second wife due to his heavy drinking. He had been operated on for a gall bladder condition and had not worked for six months prior to his death. He received unemployment compensation from the company but apparently was in debt to a considerable extent, indicated by the fact that he owed his landlord three months' rent. He lived alone and the night before his death voiced his apprehension about his health, broke down and cried, and was despondent and worried about his future. He borrowed $1 so he could see his doctor and lamented the fact that he had no money and no place to go.

There was a path leading to the tracks where the deceased was struck by an eastbound train on the main line of the Pennsylvania Railroad Company going 80 miles an hour.

The only eye witness was the train engineer, who testified the insured walked rapidly up the embankment of the tracks when the train was 700 feet away, that the warning horn was blowing continuously but the deceased paid no attention to it. He walked without hesitation until he stopped in the middle of the tracks and was down on his hands and knees facing the train when he was struck.

His hearing was good; it was a clear day and visibility was at least half a mile in the direction the train was approaching. His body was retrieved in "little pieces" and was identified by a thumb and a few fingers.

At the close of the case, each side moved for a directed verdict in its favor, the defendant urging the evidence showed the deceased committed suicide, while the plaintiff insisted it proved the decedent met his death "through accidental and external means."

Both motions were denied, the issue being submitted to the jury for its determination. The trial court, after referring to the evidence, charged: "Of course, at this posture of the case there is no legal presumption against suicide."

The jury returned a verdict for the defendant insurance company and the plaintiff appealed to the Appellate Division, where the judgment was unanimously affirmed. The matter is before us on our granting a petition for certification.

The only question to be determined is the propriety of the charge of the trial court as above-quoted.

The incident itself, the surrounding circumstances, and the preceding history all point clearly and strongly to intentional suicide. In fact, there is little, if any, evidence capable of being construed otherwise, and the inquiry is whether in this status the charge of the court that there was "no presumption against suicide" was legally justified. We think it was.

*Domanowski v. Prudential Ins. Co.*, 116 *N. J. L.* 247 (*E. & A.* 1936), pointedly holds that a presumption against suicide is not evidence and should not be treated as such by a jury in considering its verdict.

The rule as so expressed has frequently been proclaimed. In *Dunn v. Goldman*, 111 *N. J. L.* 249 (*Sup. Ct.* 1933), the court held a presumption arising under the law is not evidence; it is merely a rule concerning evidence, and a presumption so created, when met by uncontradicted proof, ceases to be a factor in the case. This case, as well as *Domanowski v. Prudential, supra,* is cited and followed in

*Kirschbaum v. Metropolitan Life Ins. Co.*, 133 *N. J. L.* 5 (*E. & A.* 1945), where the court held:

"The statement that a presumption is not evidence to establish the presumed fact is meaningless if the jury is instructed that it may take the presumption into consideration. While there may be a conflict of authority in other jurisdictions as to whether the presumption against suicide has any probative force and is to be weighed by the jury * * * the rule is settled in New Jersey that the presumption is not evidence and consequently is not for the jury to consider. As stated in the *Domanowski* case, *supra*, the presumption is for the use of the trial court in determining whether a *prima facie* case has been established so as to justify the trial court in requiring the defendant to come forward with evidence at the peril of suffering a direction of a verdict against him, if he fails to do so. That this, the settled law in New Jersey, is the sound rule finds support in the recommendations of the American Law Institute as embodied in its *Model Code of Evidence, Rule. No.* 704, and the comment thereunder * * *."

The law thus defined is re-affirmed in *Gaudreau v. Eclipse Pioneer Division of Bendix Air Corp.*, 137 *N. J. L.* 666 (*E. & A.* 1948); while in *Carroll v. Prudential Ins. Co.*, 125 *N. J. L.* 397 (*E. & A.* 1940), not only was the rule embraced, but the Court of Errors and Appeals affirmed the directing of a verdict in favor of the defendant insurance company.

In seeming conflict is *Aydelotte v. Metropolitan Life Ins. Co.*, 124 *N. J. L.* 266 (*E. & A.* 1940), where a similar request to charge was adjudged improper. A careful analysis makes it obvious the ruling was occasioned by the lack of evidence indicating death resulted from self-destruction. Under the particular circumstances present, the court held the request "went too far," but it cited the "true rule" as follows:

"This presumption against suicide, however, is rebuttable, and does not prevail where clear and definite evidence of suicide is produced; or where there is no evidence indicating an accident, *and* the facts point strongly to suicide * * *."

We are in accord with the view expressed in the Appellate Division, 26 *N. J. Super.* 312.

The judgment below is affirmed.

HEHER, J., dissenting. I shall not go into the evidence, except to say that at the time the accused was under the care of a physician, following a gall bladder operation, and there is some evidential basis for the suggestion that it is not improbable he was taking a short-cut to his physician's office, via a by-road or pathway leading to the railroad, a course he had taken on occasion. There is no contention that the proofs did not raise an issue for the jury as to whether the death of the assured was due to external, violent and purely accidental means within the intendment of the policy. The sole question is whether there was error in this instruction to the jury: "Of course at this posture of the case there is no legal presumption against suicide." The defendant insurer maintains that this "was a correct statement of the law;" but the essential inquiry is whether it was a proper instruction to the jury.

My conception of the true nature of the presumption invoked here is set down in *Meltzer v. Division of Tax Appeals*, 134 *N. J. L.* 510 (*Sup. Ct.* 1946). The presumption is not in itself evidence. It is not the fact in itself, nor the inference itself, but the legal consequence attached to it. A presumption of law compels the particular conclusion in the absence of evidence *contra; e converso*, it vanishes as a rule of law where substantial evidence is adduced by way of contradiction or explanation. But where the legal procedural consequence is thus removed by the presentation of evidence to the contrary, "the inference, as a matter of reasoning, may still remain, to be assayed for its intrinsic worth alone, without any artificial probative effect." This is sometimes loosely termed a "presumption of fact," which signifies merely the rational potency or probative value of the evidentiary fact, *i. e.* its natural force and efficacy in generating belief or conviction in the mind. Such seems to be the principle expounded in Professor Wigmore's work on *Evidence*, 3d ed., section 2491.

Thus, the presumption against suicide is a rule of law, and not the fact itself, nor the inference itself, that for policy reasons requires the jury to reach the conclusion in the

absence of evidence to the contrary from the opponent. If, says Professor Wigmore, *section* 2491, *supra,* "the opponent does offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the jury's hands free from any rule." Presumptions "are artificial rules which have a legal effect independent of any belief, and stand in the place of proof until the contrary be shown." *Smith v. Asbell,* 2 *Strob.* 141, 147 (*S. C. Ct. of App.* 1846). A presumption, continues Professor Wigmore, *section* 2491, is not to be given an "artificial probative force, * * * increasing for the jury the weight of the facts, even when the opponent has come forward with *some* evidence to the contrary"; but when the case goes to the jury they are at liberty, in assessing the evidence bearing upon the factual issue of accidental death or suicide, to consider the instinctive and well-nigh universal human love of life and aversion to death and the improbability of suicide in the usual course of things. A presumption is not to have artificial evidential weight, yet the jury may draw the natural and logical inferences from the facts which constitute the basis of the presumption. *New York Life Insurance Co. v. Gamer,* 303 *U. S.* 161, 58 *S. Ct.* 500, 82 *L. Ed.* 726, 114 *A. L. R.* 1218 (1938). But "the ordinary probability that a human being will not commit suicide" cannot be given "the force of a fact in evidence shifting the burden of proof to the defendant." *Watkins v. Prudential Life Insurance Company,* 315 *Pa.* 497, 173 *A.* 644, 95 *A. L. R.* 869 (*Sup. Ct.* 1934). There is of necessity a distinction between a bare "presumption" and a rational inference from proven facts. *Commercial Molasses Corporation v. New York Tank Barge Corporation,* 314 *U. S.* 104, 62 *S. Ct.* 156, 86 *L. Ed.* 89, 96 (1941), Stone, C. J. "Presumptions are for the judge and not the jury. Once they have served the purpose of making a *prima facie* case, their function ceases and the case goes to the jury free of the incident that the inferences thereby created have any force other than that which the jury may by their own

reasoning attach to them." *Bloch v. Brown*, 201 *Miss.* 653, 29 *So. 2d* 665, 667 (*Sup. Ct.* 1947).

The principle is embodied in the *American Law Institute's Model Code of Evidence*. *Rule* 704 affirms, with one exception not here pertinent, (1) that when the basic fact of a presumption has been established in an action, the existence of the presumed fact must be assumed unless and until evidence has been introduced which would support a finding of its nonexistence or the basic fact of an inconsistent presumption has been established; and (2) when the basic fact of a presumption has been established in an action and evidence has been introduced which would support a finding of the nonexistence of the presumed fact or the basic fact of an inconsistent presumption has been established, the existence or nonexistence of the presumed fact is to be determined exactly as if no presumption had ever been applicable in the action.

It is recognized that the presumption is one of law for the court alone, and in no sense the concern of the jury; and hence we find in the Comment to the rule this admonition of the danger of its misuse in the deliberations of the jury: "A presumption, to be an efficient legal tool, must (1) be left in the hands of the judge to administer, and not be submitted to a jury for decision of the question when it is 'rebutted' or ceases to have compelling force; (2) be so administered that the jury never hear the word presumption used since it carries unpredictable connotations to different minds; and (3) be embodied in a rule easy of application by the judge in the hurry of trial. This Rule meets these tests. It expresses the Thayerian theory that the sole procedural effect of a presumption is to put upon the party asserting the nonexistence of the presumed fact the burden of producing evidence of its nonexistence." With the observation that this means "the risk of the non-introduction of the requisite evidence," the Comment continues: "Thus, if at the time of the establishment of the basic fact of a presumption, there is already in the case evidence sufficient to support a finding of the non-existence of the presumed

fact, the establishment of the basic fact creates no new burden; but if at that time there is no such evidence in the case, the establishment of the basic fact will be the equivalent of the establishment of the presumed fact, until such evidence has been introduced. Since it is impossible that both adversaries should have the burden of producing evidence at the same time upon the same issue, this Rule makes conflicting presumptions impossible. The establishment of the basic fact of a presumption will discharge the burden created by the previous establishment in the action of the basic fact of an inconsistent presumption and will itself create no burden."

In fine, a presumption of this class is a rule of law laid down by the judge which attaches to one evidentiary fact of given probative strength, as a matter of reasoning and inference, certain "procedural consequences" relating to the duty of the adversary party to come forward with contrary evidence. It is not the fact itself, nor the inference itself, but rather the legal consequence attached to it; and when the legal consequence is removed, the inference, as a matter of reasoning, may still remain. This is the rationale of *Aydelotte v. Metropolitan Life Insurance Co.*, 124 *N. J. L.* 266 (*E. & A.* 1940), a case that, so assessed, is not in conflict with the principle of *Kirschbaum v. Metropolitan Life Insurance Co.*, 133 *N. J. L.* 5 (*E. & A.* 1945).

The intrusion of this rule of law that concerned the judge alone could not but mislead and confuse the jury. In *Commercial Molasses Corporation v. New York Tank Barge Corporation*, cited *supra*, Chief Justice Stone characterized the term "presumption" as "equivocal." Is it not a just and reasonable supposition that the jury were confounded by this allusion to a rule of law that has created so much controversy in the realm of judicial administration? Can it be reasonably said that in all human likelihood it did not perplex the understanding? I think not. The legal scholars who formulated the Code of Evidence adopted by the American Law Institute deemed this to be the sum of experience; hence, the warning that the word presumption has variant unpre-

dictable connotations to lay minds, and it is therefore a term that the jury should never hear. On the oral argument, defendant's counsel quite frankly acknowledged that his research had revealed no case in which the jury had been so directed. This vague and indefinite exposition did not take into account the factual inference permissible as a matter of reasoning, without the aid of the presumption; indeed, there is no way of divining the thought or idea that to the jurors' minds was symbolized by this expression. There can be no doubt that the term could have an implication adverse to the plaintiff—now, at this posture of the case, when all the evidence is in, there is no legal presumption against suicide. Clarity of exposition is a prime requisite of directions to a jury; and, while it is perhaps too much to expect unvarying adherence to the ideal in practice, yet the instruction, if it is to serve its essential purpose, must convey to the jury the ruling considerations and standards in understandable terms. Only in this wise can there be a fair degree of assurance that the verdict, when it comes, represents an understanding assessment of the facts in the light of the pertinent principles of law.

I would reverse the judgment and direct a new trial of the issue.

BURLING, J., joins in this dissent.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, JACOBS and BRENNAN—5.

*For reversal*—Justices HEHER and BURLING—2.