47 N.J. Super. 493 (1957)
136 A.2d 271
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROY ALLEN CORBY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 28, 1957.
Decided November 25, 1957.
*494 Before Judges CLAPP, JAYNE and HUGHES.
*495 Mr. Frank J.V. Gimino argued the cause for plaintiff-respondent (Mr. Frederick T. Law, prosecutor).
Mr. Joseph M. Schoenberg argued the cause for defendant-appellant.
PER CURIAM.
Defendant was convicted of armed robbery. Two questions are raised by his appeal, first, whether the verdict was against the weight of the evidence and, second, whether error was committed in connection with that portion of the charge to the jury, which deals with the failure of the defendant to take the stand.
The first question may be disposed of shortly. There is no basis whatever for setting aside the verdict on the ground that it is against the weight of the evidence. We concur entirely in the opinion of Judge HUGHES on the point.
The second question is raised by the following portion of the court's charge to the jury:
"Now, this defendant, like all persons charged with crime under our law, has certain basic constitutional rights that attach and belong to every person living under our Constitution. He is presumed to be innocent, and that presumption rests with him unless and until the jury by their verdict find him guilty. The burden of proof is on the State. The State makes the charge and the State, under our law, has the burden to establish guilt by proof that is known as proof beyond a reasonable doubt.

* * * * * * * *
Now, this defendant did not take the stand in his own defense. When the State's case rested, the defense rested. The defendant had a perfect right under the constitutional law of our state to testify in his defense, but he chose not to do so. And there is a principle of law that is applicable to a situation of that kind which I will read to you. It is as follows:
`When facts concerning the acts of the accused are testified to, which prove or tend to prove his guilt, and he, by his oath can deny them, his failure to testify raises a strong presumption that he cannot truthfully deny those facts.'"
No objection was taken to the charge, but defendant claims that the court committed plain errors and that we therefore may notice them. R.R. 1:5-1(a).
*496 In this case it seems not to be disputed but that the State adduced proof of inculpatory facts which were within the accused's personal knowledge and which he could by his own testimony have denied. Under such circumstances the court may instruct the jury that the accused's failure to testify gives rise to an inference, which they are permitted to accept or reject, namely, that he could not truthfully deny those facts. As was observed in State v. O'Leary, 25 N.J. 104, 116 (1957), the decisions sometimes state that the failure of the defendant to testify gives rise to a presumption. But they do not use that term in its technical sense. Technically a presumption "compels the particular conclusion in the absence of evidence contra"; and in the absence of such evidence, it requires the court to withdraw the presumed facts from the jury's consideration. Cf. In re Blake's Will, 21 N.J. 50, 58 (1956). Indeed, under our law a presumption technically is not to be weighed by the jury; it is for the use of the trial court in determining (as we have said) whether to withdraw certain issues from the jury. Flanagan v. Equitable Life Assur. Soc. of U.S., 14 N.J. 309, 313 (1954). We think, cf. State v. O'Leary, supra, that the decisions, referred to, use the term "presumption" rather in the sense of inference. In re Blake's Will, supra. However, there is no plain error in the charge in this respect. Cf. State v. O'Leary, supra.
The defendant's counsel argues that plain error was committed by the court when it failed to charge "that the defendant has a right not to be a witness in his own behalf." That defendant has such a right or privilege is, we think, implicit in the charge and in the very conduct of the trial. In the charge the court said that defendant "chose" not to take the stand; moreover it allowed the case to proceed and to be submitted to the jury without calling him to the stand. Surely the jury must have supposed that he was within his rights in not testifying.
Next, defendant contends that the court committed plain error in omitting to charge "that his failure to be a witness in his own behalf is no presumption of guilt and does *497 not erase the presumption of innocence." It is elementary that the presumption of innocence arising upon a criminal trial is in truth merely a way of expressing the familiar rule that the State has the burden of establishing the defendant's guilt by proof beyond a reasonable doubt. But the presumption does serve this important additional purpose, namely, that it cautions the jury that they must expel from their minds any suspicion they might attach to the defendant by reason of the fact that he has been indicted. See further 9 Wigmore, Evidence (3d ed.), § 2511. It seems to us not to have been plain error for the court to have failed to have included in its charge a statement that any inference arising from defendant's failure to testify does not erase the presumption of innocence. It will be observed that the court instructed the jury that the presumption of innocence rests with the defendant unless and until the jury by their verdict find him guilty, and (particularly in portions of the charge not quoted above) it instructed them as to the heavy burden of proof cast upon the State. In the face of these instructions, the jury could not have supposed that because of the defendant's failure to take the stand, he was presumed guilty.
Affirmed.
HUGHES, J.A.D. (concurring).
Our age-old concept of the presumption of innocence, however its specific status may be viewed from the standpoint of legal nicety (9 Wigmore, Evidence (3d ed. 1940), § 2511), should never become less than a living organism of the criminal law. It is my concern, perhaps unneedful, for its certain preservation in the bustle of modernity, that impels the filing of this opinion, concurring in the result reached by my esteemed colleagues.
The appellant was convicted after jury trial of armed robbery in violation of the statute, N.J.S. 2A:141-1 and N.J.S. 2A:151-5, and sentences thereunder having been imposed (cf. State v. Cianci, 18 N.J. 191 (1955)), he brings this appeal in forma pauperis pursuant to leave granted by this court. Grounds similar to those of his *498 appeal were urged without success to the trial court, on motion to set aside the verdict and for new trial.
The circumstances, giving rise to the two legal questions directed to our attention, are uncomplicated:
The Club Maria is a small tavern in Union City. On June 11, 1956, shortly before the closing hour of 3:00 A.M., business had so dwindled that a single customer and the bartender were the only occupants. The latter was "about ready to close up" the establishment, when appellant and two companions, named Lynch and Latin, entered and ordered beer. They idled for a few minutes, one placing a coin in the "juke box," until the previous patron had taken his departure. The appellant then walked toward the front of this long, narrow tavern and Lynch produced a revolver and announced that "This is a hold-up." Latin vaulted over the bar and rifled the cash register. Although the bartender testified to his impression ("Out of the corner of my eye I could see him") that appellant was some place toward the front of the premises, he finally admitted that he was so understandably bemused by the lethal weapon threatening him that he did not know whether appellant was physically inside or outside of the tavern, although he "* * * felt he was up at the front of the tavern." The hold-up completed, the bartender was forced into a lavatory, and after a discreet interval he opened the door, found himself alone and gave the alarm.
Shortly thereafter, two police officers on duty in a cruiser car, with commendable attention to duty, observed and pursued an unlighted automobile and finally intercepted it. Appellant was in the driver's seat and Lynch and Latin were crouched down in the rear. The officers brought the men out of the car at gunpoint, searched it and found a gun under a blanket on the front seat next to appellant. Money in the form of bills and change had been stuffed behind a cushion in the rear seat. The culprits made no attempt to escape and were taken into custody, and the bartender soon arrived and identified them at the scene of their apprehension, as being the three men involved in the robbery.
*499 Lynch and Latin were convicted for this armed robbery offense and sentenced to imprisonment. Each testified at the instant trial, on the call of the State, and both attempted to exculpate appellant by testifying that before the robbery he had asserted a wish to go home, that they had told him to wait in the car, and that he had been innocent of complicity in planning the venture. The robbery occurred moments after he had left the immediate presence of Lynch and Latin, and upon their hurried exit appellant drove the car from the hold-up scene. Latin testified that he had been unaware that Lynch had a gun and that when it made its appearance he cooperated in the robbery, through a combination of shock and poor eyesight which made him uncertain that what Lynch was brandishing was indeed a gun. Lynch echoed this exculpatory testimony as to appellant and admitted his own part in the robbery, attributing his possession of the gun to the familiar coincidence of having found it previously in the street. Latin's testimony as to appellant's innocence was neutralized by proof of his previous statement that he, Lynch, and the appellant together had planned the robbery. Lynch made no confession or statement. Our scrutiny of the testimony of both Lynch and Latin would impel us, as apparently it did the jury, to discard it as flimsy, ridiculous and unworthy of belief under the circumstances.
The appellant did not testify, and produced no other defense. The jury convicted him after a charge which conveyed to its attention the relevant principles of law, including a description of the charges of the indictment, a reference to the statutes allegedly offended, a reminder that guilt could result from a finding that appellant had been present, aiding, assisting and abetting the actual physical perpetration of the hold-up, the bearing of the circumstantial evidence upon the ultimate fact of such participation, the duty of the jury to consider and weigh all evidence admitted, regardless of its source, and plainly stating that
"The mere presence on the part of the defendant is not sufficient to render him guilty of participation in the crime of robbery."
*500 This charge adequately emphasized the supremacy of the jury in the fact-finding area, the existence and lasting nature of the protective presumption of innocence, and the burden on the State to establish guilt beyond a reasonable doubt, which concept was, in turn, clearly and adequately defined. The court further charged:
"Now, this defendant did not take the stand in his own defense. When the State's case rested, the defense rested. The defendant had a perfect right under the constitutional law of our state to testify in his defense, but he chose not to do so. And there is a principle of law that is applicable to a situation of that kind which I will read to you. It is as follows:
`When facts concerning the acts of the accused are testified to, which prove or tend to prove his guilt, and he, by his oath can deny them, his failure to testify raises a strong presumption that he cannot truthfully deny those facts.'"
The ground of appeal challenging the weight of the evidence is unnecessary of extended discussion in view of the nature of that evidence. In our view, it clearly justified the verdict of the jury attesting to appellant's guilt, for the circumstances were so incompatible with any reasonable concept of a coincidental innocence on his part as to challenge credulity. The verdict of a jury may not be set aside as against the weight of evidence, unless it clearly and convincingly appears that it was the result of mistake, partiality, prejudice or passion. R.R. 1:5-1; State v. Treficanto, 106 N.J.L. 344 (E. & A. 1929); State v. Hauptmann, 115 N.J.L. 412 (E. & A. 1935); State v. Monia, 132 N.J.L. 91 (Sup. Ct. 1944); State v. Cordasco, 2 N.J. 189 (1949); State v. Pierce, 4 N.J. 252 (1950); Hager v. Weber, 7 N.J. 201 (1951); State v. Narushef, 15 N.J. Super. 483 (App. Div. 1951). Such was not the case here.
By his remaining assignment of error, appellant points to the portion of the charge relating to his failure to testify in his own defense, characterizing it as substantially erroneous in its impact upon his right to such abstention, and the implicative bearing thereof upon his guilt or innocence of the basic charge against him. Although no objection to the charge was made, and no specific request had been placed *501 before the court, we are asked to notice the asserted matter as "plain error(s) affecting substantial rights of the defendant." R.R. 1:5-1, supra. The particular defect so urged resides in the failure of the court to remind the jury of the right of the accused not to take the stand, without derogatory effect upon the general presumption of innocence, which surrounds him until the ultimate finding of guilt beyond a reasonable doubt.
The effect of testimonial silence of an accused at his trial has received much attention from our courts. While our present chief justice has noted the volume of divergent decisional pronouncements as to the nature of such result, i.e., between the permitting of an inference on the one hand, or the raising of a "strong presumption" on the other (State v. O'Leary, 25 N.J. 104, 116 (1957)), such effect is, in either aspect, confined to the incriminatory facts, unexplained or undenied, and does not extend, per se, to the ultimate guilt of the accused, as a quasi-admission of terminal guilt. Whatever may be the implication of silence on the part of defendant in the face of factual accusations against him, it does not extend to the dilution, much less to the destruction, of the presumption of innocence which the centuries have established as the chief cornerstone of the edifice of our liberties. The decisions suggest the reality of this distinction, but not without some confusing effect.
In Parker v. State, 61 N.J.L. 308 (Sup. Ct. 1898), affirmed 62 N.J.L. 801 (E. & A. 1899) (which established the practice permitting comment by the prosecution and by the court upon the silence of the accused), the general rule was stated in this manner:  "* * * when the accused is upon trial, and the evidence tends to establish facts which, if true, would be conclusive of his guilt of the charge against him, and he can disprove them by his own oath as a witness if the facts be not true, then his silence would justify a strong inference that he could not deny the charges." (Italics supplied, for reasons to be noted infra.) The court there foresaw the contingency presented later in State v. Wines, 65 N.J.L. 31 (Sup. Ct. 1900), a case of circumstantial *502 evidence, where "there was no direct evidence to connect the accused with the crime charged," and where a repetition in the court's charge of the language of Parker v. State, supra, was considered reversible error, the court distinguishing the Parker case, in which several witnesses had testified to criminal acts personally committed by the accused. The decision in State v. Twining, 73 N.J.L. 683 (E. & A. 1906), approving both Parker and Wines, repeated the distinction "* * * between the situation of a defendant against whom there was direct evidence of guilty acts, which he failed to deny by his own evidence though privileged to do so, and his situation when the evidence against him was only circumstantial * * *." In State v. Kisik, 99 N.J.L. 385 (E. & A. 1924), Chancellor Walker, describing Parker as the "leading case in this state on the question," suggested refinements in the language thereof, recommending this as an acceptable formula: "* * * if facts are testified to which concern the acts of the defendant which he could by his oath deny, his failure to testify in his own behalf raises a strong presumption that he cannot truthfully deny them." And here, more importantly, was noted the soul of the distinction to be observed in the conceptual separation of the term "guilt" of the charge laid in the indictment, from that of facts, probative or even "conclusive" of guilt. Cf. Parker v. State, supra. In the Kisik case, the trial court had called to the attention of the jury the failure of the defendants to take the stand in their own behalf and told the jury it could place such importance on this as they saw fit. Reversing for this cause, the Chancellor wrote for the court, concerning the error of this instruction, as follows:
"* * * This left it open to the jury to find that the refusal of the defendants to deny facts which, if true, established their guilt, was tantamount to confession of guilt, which, in turn, would alone justify their conviction, when, as matter of law, it raised only a strong presumption that they could not deny such facts. A defendant in a criminal case is entitled to have the jury consider all of the facts in evidence, even if he does not deny by his own oath such facts as criminate, or tend to criminate, him. And he is entitled to the presumption of innocence unless and until the jury *503 agree on a verdict of guilty upon a consideration of all of the evidence (State v. Raymond, 53 N.J.L. 260, 267), and this beyond a reasonable doubt. (State v. Linker, 94 N.J.L. 411)."
But a third category exists also, a case lacking in the direct evidence of the guilt-acts, as in Parker, depending on circumstantial evidence of guilt as in Wines, or as in State v. Friedman, 135 N.J.L. 414 (Sup. Ct. 1947), reversed 136 N.J.L. 527 (E. & A. 1948), and yet containing direct evidence of circumstantially inculpatory facts susceptible of denial or explanation by defendant because dealing with his personal acts or knowledge. In such case, comment upon his failure to meet such inculpatory proofs by his testimony is held proper. State v. Callahan, 77 N.J.L. 685 (E. & A. 1909); State v. Friedman, supra; State v. Edelman, 19 N.J. Super. 350 (App. Div. 1952); State v. Marinella, 24 N.J. Super. 49 (App. Div. 1952); State v. Rogers, 19 N.J. 218 (1955). It is into this third grouping that the case sub judice seems to fit, inasmuch as no direct evidence of the guilt-act of personal physical participation in the armed robbery was shown against appellant, whereas direct evidence of circumstantially inculpative acts on his part, as in State v. Rogers, supra, was presented.
It must be observed in all candor, however, that time has not entirely settled the state of the law which led former Chief Justice Case to say in State v. Anderson, 137 N.J.L. 6 (Sup. Ct. 1948), that "Our appellate courts have not always been entirely clear in their expressions on the subject." In that case, a conviction was reversed because the charge permitted the jury to infer from the defendant's refusal to testify in his own behalf, that he could not deny the charge laid against him in the indictment. But in reversing, the court was careful to point out that the proof was purely circumstantial, leaving open the question as to whether a different result would have been reached had the failure to testify involved facts not only circumstantially inculpative, but "conclusive" as to guilt. Does such an abstention justify an inference or presumption bearing upon the criminatory facts, and entering into the evaluation of the proofs as a *504 whole, as suggested by State v. Lutz, 135 N.J.L. 603 (Sup. Ct. 1947) (a circumstantial evidence case), consistent with the common law exemption from compulsory self-crimination (State v. Friedman, supra), or does it justify, without more, an inference of guilt of the basic charge? The latter alternative would seem to collide with the Kisik distinction, supra. And yet, although it was repeated in State v. Anderson, supra, that "The baleful effect of a defendant's failure to testify is measured by the proofs which go unanswered by the defendant under oath rather than by the mere failure per se to testify," it has been said in later cases that
"Where the State presents direct evidence of a material fact which is prejudicial to the defendant and which is within his personal knowledge, then his failure to deny the fact justifies an inference unfavorable to the defendant. If the fact is conclusive of his guilt, his silence justifies a strong inference that he cannot deny the charge contained in the indictment." State v. Edelman, supra.
And again, in State v. Marinella, supra,
"In an analytic study of an instruction of the court within this category it is judicious to observe whether the postulate of the instruction relates merely to inculpatory acts of the defendant and criminatory facts of which the defendant has knowledge or to facts within his cognizance which are conclusive of his guilt.
The postulate regulates the nature and extent of the permissible inference. In the former instance, the only deductive inference is that the defendant cannot truthfully deny those facts; in the latter, the more expansive inference arises that he cannot truthfully deny the accusation of guilt alleged in the indictment." (sic)
And again, in State v. Rogers, supra,
"* * * where the prosecution's evidence is wholly circumstantial, the jury may not infer from the silence of the accused that he cannot deny the ultimate fact in issue  his guilt of the crime charged; the area of permissible inference from his silence is in such cases confined only to facts within his knowledge which, if true, would tend to establish his guilt. The jury may properly infer from the defendant's silence that the facts from which an inference of guilt may be drawn cannot be denied by him."
*505 Does the limitation of the above language imply, where the proofs are not circumstantial but, e contra, directly inculpative, or "conclusive" of guilt, that the silence of the accused entitles the jury to infer that he "cannot deny the ultimate fact in issue  his guilt of the crime charged"? If so, is the jury bound to consider the other evidence in the case, or may a conviction rest solely upon that inference? The latter contingency would seem to conflict again with the view of State v. Kisik, supra, which restricted the presumptive force to the finding of an inability of accused to deny the incriminatory facts, stoutly insisting that even as to "facts * * * which, if true, established * * * guilt," a defendant in a criminal case is entitled to have the jury consider all of the facts in evidence, being entitled to "the presumption of innocence unless and until the jury agree on a verdict of guilty upon a consideration of all of the evidence * * *, and this beyond a reasonable doubt."
On the face of the matter, it would seem that the identity of inferential result as between "guilt of the crime charged" (State v. Rogers, supra) and inability truthfully to deny facts conclusive of guilt may be traced, coincidentally, to the terminology of the early statement of the rule in Parker v. State, which is reproduced above (and still in use, verbatim, in the trial courts despite State v. Kisik, supra; vide State v. Edelman, supra), in which the court referred to evidence tending to establish "facts which if true would be conclusive of his guilt of the charge against him," using the singular "charge," and then dealt in the same sentence with the eventuality that his "silence would justify a strong inference that he could not deny the charges," using the plural form of the same word. It seems not beyond the realm of possibility that in relating the "strong inference" to the denial of the "charges," the court intended to refer to the "charges" of inculpatory acts of the accused rather than to the "charge" of crime laid against him in the indictment. Whatever the origin of the divergent views I have discussed, I am convinced, inter alia, by the continuing insistence of the appellate courts that the jury be informed that the failure of a *506 defendant to testify creates no presumption of guilt or erasure of the presumption of his innocence (State v. Marinella, supra), that the apparent differences in the statements of the rule are semantic rather than of substance; that the seemingly synonymous classification of the "accusation of guilt" alleged in the indictment and facts which are "conclusive" of that guilt, as being mutually subject to the inferential force of a failure to testify, are not intended to dissipate the integrity of the traditional presumption of innocence, nor encourage the jury to ignore the total body of evidence in a criminal case in reliance upon the inference thereby permitted. A different rule, even in the face of persuasive direct evidence of acts "conclusive" of guilt would dangerously approach collision with the common law exemption from compulsory self-crimination and a point would be reached in a criminal case where the failure of a defendant to testify personally would militate against the concept of life which the law infuses into the presumption of innocence until such time as the jury, under all of the evidence and beyond a reasonable doubt, has reached the terminal conclusion of guilt. State v. Kisik, supra.
Our appellate concern with the propriety of the instant comment by the court extends to whether the evidence was such as to have made any comment appropriate, and whether the form of the comment, if appropriate, exceeded permissible limits. State v. Costa, 20 N.J. Super. 28 (App. Div. 1952), affirmed 11 N.J. 239 (1953). We have seen that comment by the court here justly was elicited by appellant's silence in the face of a multitude of circumstances which clamored for his explanation, including, inter alia, his loitering in the tavern until the departure of the final customer had set the stage for violent crime; his momentary absence which could well have been to serve as lookout while the robbery was committed; his driving of the "get away" car in the hurried flight which ensued; and his apparent possession of the gun used in the holdup.
Was the form of comment justified in the context of the court's remaining charge? As suggested by Chief Justice *507 Weintraub in State v. O'Leary, supra, there is wide fluctuation in our decisional law as to the nature of the inference or presumption raised by silence in the face of incriminatory proofs. This ranges from the suggestion of a permissible inference, to the actuality of a strong presumption, as may be noted from the variations in language used in the following cases: Parker v. State, supra; State v Wines, supra; State v. Banusik, 84 N.J.L. 640 (E. & A. 1906); State v. Skillman, 76 N.J.L. 464 (Sup. Ct. 1908), affirmed 77 N.J.L. 804 (E. & A. 1909); State v. Callahan, supra; State v. DiBenedetto, 82 N.J.L. 168 (Sup. Ct. 1912), affirmed 83 N.J.L. 792 (E. & A. 1912); State v. Shilling, 95 N.J.L. 145 (E. & A. 1920); State v. Kisik, supra; State v. Rubenstein, 5 N.J. Misc. 387 (Sup. Ct. 1927); State v. Boccadoro, 105 N.J.L. 352 (E. & A. 1929); State v. Lennon, 107 N.J.L. 94 (E. & A. 1930); State v. Gimbel, 107 N.J.L. 235 (E. & A. 1930); State v. Sgro, 108 N.J.L. 528 (E. & A. 1932); State v. Jefferson, 131 N.J.L. 70 (E. & A. 1943); State v. Anderson, supra; State v. Gawronski, 9 N.J. Super. 51 (App. Div. 1950); State v. Ellrich, 10 N.J. 146 (1952); State v. Carbone, 17 N.J. Super 446 (App. Div. 1952), affirmed 10 N.J. 329 (1952); State v. Edelman, supra; State v. Wilson, 23 N.J. Super. 539 (App. Div. 1952); State v. Marinella, supra; State v. Costa, supra; State v. Greely, 11 N.J. 485 (1953); State v. Wise, 19 N.J. 59 (1955); State v. Rogers, supra; State v. DeMeo, 35 N.J. Super. 168 (App. Div. 1955), appeal dismissed 20 N.J. 1 (1955).
While such terminological incertitude encourages me to state, with appropriate deference, my leaning toward a phraseology which would permit an inference, even a strong one, on the part of the jury as to the inability of the accused truthfully to deny the incriminatory facts presented against him (since a mandatory "presumption" in its strongest sense would seem to dilute the privilege which is his), I am not authorized to condemn the use of the term "strong presumption" in the face of the majority opinions in Costa, Rogers, Wise and O'Leary, supra, as well as others of the cases I *508 have identified. I agree that civilized sentiments against forcing the accused to convict himself from his own lips should not be held to be of such strength as to deny the court and prosecutor the right to emphasize the reasonable implications arising from a failure of the accused to take the stand. Clapp, "Privilege against Self-Incrimination," 10 Rutgers L. Rev. 541, 556 (1956). But such reasonable implications should stop short of sealing the issue, as though the testimonial silence of accused equated a confession of guilt, lest other valuable safeguards of human freedom undergo a fatal process of erosion.
The learned court here related the strong presumption mentioned to the inability of the silent defendant to "truthfully deny those facts" which "prove or tend to prove his guilt," and since such facts concerned the personal acts of the accused the qualification, a formula approved in State v. Costa, supra, did not exceed the reasonable implication of his silence, nor encourage the jury to infer guilt per se from his failure to take the stand. While it would have been better to emphasize, or to iterate in the body of such portion of the charge the persistence of the presumption of innocence, the earlier statement of the court that "He is presumed to be innocent, and that presumption rests with him unless and until the jury by their verdict find him guilty," with the other emphatic and cautionary reminders of the rights of the accused to which we have adverted, made up, in contextual whole, a charge which could have been more precise, but which was unimpeachable as to basic fairness. I distinguish our decision in State v. Wilson, supra, classifying as plain error substantially affecting the rights of the defendant, a fractionalized charge relating the strong presumption (in a purely circumstantial evidence case) to the inability of defendant to "truthfully deny the facts presented by the State" as encouraging the jury to identify the term "facts presented by the State" with the total concept of guilt of the crime charged in the indictment (as though the court had said the "case presented by the State"), rather than limiting it to "those facts," i.e., inculpative *509 facts concerning acts or conduct of the defendant tending to prove his guilt, under the formula outlined in State v. Costa, supra.
I agree with the other members of the court that there is to be perceived no error plainly affecting the substantial rights of this appellant, nor betokening any manifest wrong or injury to him (R.R. 1:5-1, supra; cf. State v. Greely, supra), and that the judgment of his conviction should be affirmed.