This is an appeal from a judgment of conviction for bigamy entered in the Bergen County Court of Special Sessions.
Prior to August, 1946, the defendant Haim Najjar lived with his wife and three children in the State of New York. On August 6, 1946, he obtained a decree in Mexico, purporting to divorce him from his wife. He was never in Mexico but had arranged by mail for an appearance by an attorney in Mexico. His wife was never in Mexico nor did she authorize or enter any appearance. The decree contains no recital or adjudication on the subject of domicil; on the contrary, it simply states that the husband submitted to the court's jurisdiction and was represented by an attorney, that the grounds for his action were incompatibility of temperament and cruel treatment, that his wife was ordered served by publication because her whereabouts were unknown and that she was granted "three days to answer the complaint".
On September 4, 1946, the defendant married Mina Mintzeles at Hackensack, Bergen County, New Jersey. As a result of this marriage he was indicted for bigamy and upon his request and execution of waiver he was tried before the trial judge without a jury. At the trial the defendant testified that his attorney had advised him that although his home State of New York would not recognize his Mexican decree, New Jersey would and that although he still had doubts on the subject these were dispelled when the clerk in Hackensack issued a marriage license with knowledge of his Mexican decree. The trial judge found him guilty and the defendant appeals from the resulting judgment of conviction urging (1) that since New Jersey is not the domiciliary State of the parties it may not inquire into the validity of the Mexican decree; (2) that the New Jersey bigamy statute should be construed as inapplicable where the marriage is between non-residents and follows a decree of any court having general divorce jurisdiction; and (3) that the defendant should have been acquitted on the ground that he had no criminal intent. *Page 211 
Domicil, as the jurisdictional basis for divorce, is universally recognized in all of our States and throughout the English-speaking world. Without it no State may properly decree a divorce; with it any State, whether it be the original domiciliary State or a newly acquired domiciliary State, such as Florida, Nevada, or elsewhere, may decree a divorce which will be entitled to recognition everywhere under the full faith and credit clause. See Williams v. North Carolina (I),317 U.S. 287 (1942). However, the jurisdictional finding of domicil by the newly acquired domiciliary State may still be questioned(Williams v. North Carolina (II), 325 U.S. 226 (1945)),
at least where it was not made in a proceeding in which both parties appeared and participated, (Sherrer v. Sherrer,334 U.S. 343 (1948)).
The Mexican decree, which admittedly is not entitled to the protection afforded to judgments of courts of our sister States by the full faith and credit clause, is not based upon a jurisdictional finding of domicil. Although there is no proof before us, the parties have assumed that it is valid within theof Mexico, 2 Law and Contemporary Problems, p. 310 (1935).Mexico, 2 Law and Contemporary Problems, p. 310 (1935). Be that as it may, it has no extraterritorial effect and should receive no recognition here. Reik v. Reik, 109 N.J. Eq. 615(Ch. 1932) aff'd 112 N.J. Eq. 234 (E. A. 1933); Newtonv. Newton, 13 N.J. Misc. 613 (Ch. 1935); Greenspan v.Greenspan, 19 N.J. Misc. 153 (Ch. 1941). Indeed, such a divorce has recently been described as a nullity "from which no rights of any kind may spring". See Caldwell v. Caldwell,298 N.Y. 146, 81 N.E.2d 60 (1948) and comment in 62 Harv.L. Rev. 131, 132 (1948) that the "case indicates that New York will treat mail-order divorces as complete nullities, although other divorces void for want of jurisdiction are often given some force". But compare Weise v. Hughes, 1 N.J. Super. 104, 62 A.2d 695 (App.Div. 1948). Whether one favors strict or liberal divorces it seems clear that the moral standards of our community require unequivocal rejection of the suggestion that mail order divorces may have some validity within our borders. *Page 212 
 1.
Appellant's first contention is that even though New York, as his domiciliary State, would disregard his Mexican decree, New Jersey, as a non-domiciliary State, has no sufficient interest to question it, citing Floyd v. Floyd, 95 N.J. Eq. 661 (E. A. 1924) and Greensaft v. Greensaft, 120 N.J. Eq. 208 (E. A. 1936). In Sherman v. Federal Security Agency,166 F.2d 451 (C.C.A.3d 1948) the court, after pointing out that the cited cases were direct attacks on foreign divorces by non-residents where New Jersey had no interest in the marital status of the parties, soundly concluded that they have no application to a proceeding properly within New Jersey's jurisdiction where the attack on the foreign divorce arises in the course thereof. Cf. Fried v. Fried, 99 N.J. Eq. 106(Ch. 1926); Payne v. Payne, 2 N.J. Super. 270, 72N.J.L.J. 1 (Ch.Div. 1948). See Smith v. Smith,72 Ohio App. 203, 50 N.E.2d 889 (1943). Accepting appellant's contention that New Jersey had no interest in his marital status at the time he obtained his Mexican decree, it nevertheless has, at all times, a vital and legitimate public interest in the enforcement of its laws relating to bigamy. In furtherance of that interest appellant's prosecution resulted, and in the course thereof, the trial judge properly was called upon to pass on the issue of whether appellant had a divorce decree from a "court having cognizance thereof" within the express statutory exclusion. We are convinced that the trial judge's action in holding that the Mexican decree was utterly void and did not satisfy the statute was entirely correct.
 2.
Appellant next urges that the bigamy statute (R.S. 2:113-1) be narrowly construed and that it be deemed inapplicable to non-residents who marry here. We find no reason of policy and nothing in the statutory language which lends support. Appellant then suggests that the statute be construed to compel the court to recognize a divorce decree of lesser quality than one generally entitled to full faith and credit. All that need be stated in this connection is that a reading of the statute, *Page 213 
which is basically similar to bigamy statutes in other States, discloses a definite legislative intent and its adequate expression; a person who remarries within this State on the basis of a divorce decree which New Jersey recognizes, under the principles hereinbefore expressed, as made by a court having jurisdiction to grant it, is not guilty of bigamy; a person who remarries within this State on the basis of a divorce decree which New Jersey does not so recognize, at least where the decree lacks even colorable validity, as does the appellants, is guilty of bigamy.
 3.
Appellant's final contention is that he acted in good faith and in the belief that his Mexican divorce was valid and that the statute should be construed to afford him a defense on the basis of lack of guilty knowledge. Since we are dealing with a statutory offense, the question is entirely one of statutory construction. See Halsted v. State, 41 N.J.L. 552 (E. A.
1879); State v. Kuehnle, 85 N.J.L. 220 (E. A. 1913). The statute first declares in absolute terms that a spouse who remarries while the other is living is guilty of bigamy and then lists four exclusions based on certain circumstances including divorce, without any mention of good faith or guilty knowledge. In many other States bigamy statutes of similar import have been construed to afford no defense to a defendant who, in good faith, married on the basis of an invalid divorce. See State v. Long,
___ Del. ___, 59 A.2d 545 (Gen. Sess. 1948), where the court recently collected the pertinent authorities, saying:
"We find the overwhelming weight of authority to be that in a prosecution for bigamy, under enactments containing exceptions in favor of persons who have been lawfully divorced, a bona fide belief that a legal divorce has been granted affords the accused no defense, the reason being that the Legislature having fixed the exceptions the Courts cannot extend them to persons who have not been, but who in good faith believed they have been, lawfully divorced. Further, if the pretended decree of divorce upon which the person relies is in fact illegal and void because made by a Court having no jurisdiction, it affords no protection against the consequences of a second marriage whatever may have been the defendant's motive or his belief in respect to the validity of the decree, since his mistake or *Page 214 
ignorance, if any, was one of law and not of fact. His case is one to which the maxim `ignoranti juris non excusat' applies."
See State v. Goonan, 89 N.H. 528, 3 A.2d 105
(1938). Cf. State v. Pruser, 127 N.J.L. 97, 101 (Sup.Ct.
1941).
Appellant points to the harshness which may result from a comprehensive ruling that criminal intent is not an essential ingredient of bigamy and refers to an illustrative instance in which a wife remarries after having been erroneously advised by the War Department that her husband has been killed in action. There the wife's conduct is induced by factual error and reasonable belief that she had the right to remarry; determination as to whether she would be guilty of bigamy may be deferred until a case involving her prosecution is presented. In the appellant's case, he did not proceed on the basis of any factual error; on the contrary, he knew all the facts and his remarriage was in purported reliance on a decree legally void and generally known to be worthless. Cf. Caldwell v. Caldwell,supra, where the New York Court of Appeals noted that, "the legal profession and, indeed, the general public now recognize the valueless character of mail order divorces". Without expressing any opinion as to the availability, in situations not before us, of a defense resting upon the alleged absence of criminal intent, we are satisfied that in the light of the uncontroverted facts presented to the trial judge he properly found that the appellant had committed the crime of bigamy.
The judgment of conviction is affirmed. *Page 215