STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. LEONARD COSTA, DEFENDANT-RESPONDENT.

Argued December 8, 1952—Decided January 19, 1953.

240

*Mr. David H. Harris* argued the cause for appellant (*Mr. Theodore D. Parsons*, attorney).

*Mr. Martin J. DiMaria* argued the cause for respondent.

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. We certified upon the State's petition the judgment of the Appellate Division reversing Costa's conviction in the Bergen County Court upon an indictment for keeping a gambling place in violation of *R. S.* 2:135–3, since superseded by *N. J. S.* 2*A*:112–3. 10 *N. J.* 317 (1952).

We are not in accord with the opinion of the Appellate Division, 20 *N. J. Super.* 28 (1952), that the trial court should have granted Costa's motion for acquittal and that it was error to comment in the charge upon Costa's failure to take the stand. We agree, however, that Costa is entitled to a new trial as plainly in the circumstances of the case he suffered manifest wrong and injury by the admission into evidence of the five indictments against Joseph Doto ("Joe Adonis"), James Lynch ("Piggy Lynch"), Salvatore Moretti ("Solly Moore"), Arthur Longano and Anthony Guarini, charging each with the identical offense charged

to Costa, and upon each of which indictments are notations showing that the person indicted entered a plea of *non vult* thereto and was sentenced and fined. In our view the prejudice to Costa resulted, not for the reason given by the Appellate Division that if the indictments were introduced to affect the credibility of the witnesses the State produced no evidence from the five to support the charge against Costa, as we think the State did obtain relevant testimony from those witnesses when they were recalled to the stand, but because the substance of the contents of the indictments and the facts of the pleas of *non vult* thereto having once been elicited on the oral testimony of the witnesses the indictments themselves were not admissible in evidence, and, in the circumstances of this case, their presence before the jury must have had the plainly injurious effect of having the jury consider them for the improper purpose of evidencing Costa's guilt and to lead them to find that, as the five admitted the commission of the crime in the period charged, Costa must also be guilty of having committed it at that time.

The indictment is that Costa, contrary to the statute, between January 24, 1949 and March 31, 1949 "did wilfully, knowingly and unlawfully keep a certain place known as Costa's Barn, or Costa's Garage, Route 6, in the Borough [of Lodi] and County [of Bergen], with intent on the part of him, the said Leonard Costa, that persons might and should resort thither for the purpose of gambling with dice."

██ The garage was built for Costa by his father sometime around 1943. Thereafter and throughout the period in question Costa had exclusive possession and control of it, without obligation for rent. His counsel conceded on his opening that prior to August 1948 "this barn was used for a gambling casino but stated Costa's position to be that after August 1948 and particularly in the period charged "the place was never used as a gambling casino." However, one Seidenberg testified that on at least one night between January 24, 1949 and March 31, 1949, he was transported

there by automobile from New York City for the purpose of gambling with dice and that he did gamble with dice there on that occasion. This testimony was sufficient evidence to support the allegation in the indictment that persons might or should resort there during that time for the purpose of gambling with dice. Proof of frequency or habitual repetition of such activity during the period charged is not required. Proof of even a single instance suffices. *State v. Clark*, 137 *N. J. L.* 10 (*Sup. Ct.* 1948), affirmed 137 *N. J. L.* 614 (*E. & A.* 1948).

There was also evidence from which the jury could infer that Costa knew of and permitted the use of the garage for gambling with dice during such period. His brother testified that Costa repaired cars in the garage during such period "at night and whenever he had the chance, at day or night." There was also testimony by the witness Grippo, chauffeur for Anthony Guarini, that when he visited the garage with Guarini "in the spring of 1949" he saw "crap tables" there. Such proof of Costa's direct exposure to events going on in the garage justified a finding by the jury that he must have come to see and know about and to have permitted them. 2 *Wigmore, Evidence* (3d ed. 1940), *sec.* 245, *p.* 43.

It is true that the statutory offense requires proof of an additional ingredient not necessary to be shown upon an indictment for keeping a disorderly house. The common law offense is established when it is proved that the defendant permitted his place to be used by persons whose conduct to his knowledge rendered the place disorderly, whatever his intent may have been. Proof of the statutory offense, however, must reach beyond, to his intent, and support the inference that the defendant intended that persons should resort to the place for the purpose of gambling. *State v. Ackerman*, 62 *N. J. L.* 456 (*Sup. Ct.* 1898) ; *State v. Griffin*, 85 *N. J. L.* 613 (*E. & A.* 1914) ; *State v. Terry*, 91 *N. J. L.* 539 (*E. & A.* 1918), reversing 89 *N. J. L.* 522 (*Sup. Ct.* 1916) ; *State v. Clark, supra.* But "Intent as a separate

proposition for proof does not commonly exist." *Wigmore, supra, sec.* 242, *p.* 39. It must ordinarily be discovered, as other mental states are, in the evidence of defendant's conduct in the surrounding circumstances, and upon the instant indictment "might or might not be inferred from his knowledge and permission." *State v. Ackerman, supra, p.* 459.

▮ In this case, not only did the evidence of Costa's use of his garage in the period, in the light of the surrounding circumstances shown, support the inference that he must have known of and have permitted the resort thereto at that time by persons for the purpose of gambling with dice, but also was such that, viewed in its entirety, *cf. State v. Goodman,* 9 *N. J.* 569, 581 (1952), the jury could properly find therefrom beyond reasonable doubt, that defendant between the dates charged kept the garage with intent that persons might and should resort there for the purpose of gambling with dice. There was evidence from several witnesses, including the five mentioned, which showed that Costa's Garage and other places, of which "Hayes Garage," "The Studio" and "The Baby Carriage Factory" were identified, formed a network of gambling places or "drops" in Bergen County which was operated by the five and was serviced with customers transported from New York City in a fleet of 16 automobiles maintained for the purpose at a large parking lot in the center of New York City. That none of such witnesses gave testimony or would admit that the operation was carried on in the garage after August or September 1948 does not militate against the legitimacy of the inference that it must have continued through the period charged, in light of Seidenberg's testimony that he was transported by that means to the garage for the purpose of gambling with dice during the period, and that he gambled with dice there.

▮ Our conclusion does not in anywise rest upon the oral testimony of the five and the contents of the indictments against them in evidence revealing their respective admissions of guilt of the same crime charged to Costa. That evidence is wholly without probative value against Costa. The State

urged at the trial, and urges here, that the *non vult* pleas of the five could properly be considered by the jury as evidential of Costa's guilt. On its brief the State asks, "Is it not a fair inference which the jury may realistically draw from the admission of one, or all five, that the sixth man must have been a party thereto by reason of the identity of all six?" This contention is utterly devoid of merit. If his plea of *non vult* be considered as an admission by each of the five of the facts stated in the indictment against him, such admissions, singly or collectively, are not admissions by Costa and therefore are not evidential against Costa unless falling within some recognized exception to the general rule. *State v. Fox*, 12 *N. J. Super.* 132 (*App. Div.* 1951). One such exception is that under which a statement of one conspirator or co-actor made in furtherance of the conspiracy or common enterprise is evidential against another conspirator or co-actor, and the State suggests, "Is not the force and effect of the six similar indictments tantamount to a joint indictment, or a conspiracy indictment?" The answer is that Costa was not indicted as a conspirator or co-actor with the others and was not tried upon that theory but was called upon to make his defense only against an indictment charging him with the keeping of the garage as a gambling place in violation of the statute as if he were the sole person charged with the offense. Moreover, the pleas of the five were not made in furtherance of any common plan to which they and Costa were parties, but were at best acts of co-conspirators made after the object of the conspiracy had been consummated, and thus could not be evidence against Costa under the exception. *State v. Herbert*, 92 *N. J. L.* 341, 359 (*Sup. Ct.* 1918).

By statute, *R. S.* 2:97–13, now superseded by *N. J. S.* 2A:81–12, the conviction of any witness of any crime may be shown for the purpose of affecting his credibility. It was formerly doubted that the statute was warrant for the legal impeachment by the State of its own witnesses in this manner. *State v. Young*, 93 *N. J. L.* 396, 405 (*E. & A.*

1919). However, in *State v. Fox, supra,* the Appellate Division held that when the State must rely on the evidence of a criminal the fact of his conviction for crime "may aid the jury in weighing his testimony" and that therefore it was proper for the State "at the beginning of the examination" to bring out the fact that the witness has been convicted of crime.

█ It can be conceded that the rule of the *Fox* case will not ordinarily disadvantage the defendant on trial. Indeed such disclosure by the State of possible frailties in the case against him may serve to aid his cause while at the same time it protects the State against the inference that vital information was withheld from the jury, which inference we suppose may be made if the facts are first developed on cross-examination of the State's witnesses. However, this case discloses that there are circumstances in which the production of such evidence by the State can be highly prejudicial to the defendant and deny him a fair trial. The damage is implicit where, as here, the witness and the defendant have been separately indicted for the identical crime and the witness enters a plea but the defendant elects to stand trial. In such case it is incumbent upon the trial judge closely to supervise the introduction of the proofs of the witness's conviction for the offense and carefully to instruct the jury, not necessarily in only his charge but perhaps also when the proofs are admitted, as to the limited office to be served by the evidence in their consideration of it.

Here the State was obliged to prove that persons resorted to Costa's Garage in the period from January 24, 1949 to March 31, 1949 for the purpose of gambling with dice. Costa's counsel told the jury on his opening that such activity had ceased many months earlier. Only Seidenberg testified to some activity during the time and although his evidence was sufficient to take the case to the jury on the question, the State's case would necessarily be aided by supporting proof of the fact. In the lay mind, the admissions by five notorious lawbreakers that they conducted such opera-

tions at the garage at the time and had suffered prison sentences and heavy fines for their offenses, could not help but influence the jury to think, unless most carefully and meticulously instructed upon the impropriety of their consideration of the proof for that purpose, that by such proof alone the State had proved this essential element of its case against Costa.

 The possibility of such prejudice was increased at the trial below by the manner in which the State introduced the proofs. The five were put on the stand one after another shortly after the trial started. Whether any one of them had been convicted of any other crime is not disclosed in the record, because each was interrogated only as to this one offense by him. Each was excused from the stand almost immediately upon his answering affirmatively the question, varied in form only in minor particulars: "In May of this year, it is a fact, is it not, Mr. ———, that you were under indictment on a charge that you [quoting from the indictment] did willfully, knowingly and unlawfully keep a certain place known as Costa's Barn or Costa's Garage, Route 6, in the Borough of Lodi, County of Bergen, between the period of January 24, 1949 and March 31, 1949, so that persons might and should resort thither for the purpose of gambling with dice, and that you entered a plea of *non vult* to that indictment?." Since interrogation to disclose conviction of a crime for the purpose of affecting credibility may embrace anything which is part of the record of conviction, *State v. Rodia*, 132 *N. J. L.* 199 (*E. & A.* 1944), the quotations from the indictment were not improper. But as the interrogation is proper only to affect credibility, necessarily the State must also purpose to follow up this line of examination with questions having the object of adducing proof bearing on the charge against the defendant. This was not done in this case until much later in the trial when the five were recalled and then testified to the matters already mentioned. In the circumstances the State might well have been required to complete its direct examination of each

witness on his first appearance or at least time should have been taken at that point to caution the jury upon the limited purpose for which the evidence was being admitted. While the State took the position throughout the trial, though erroneously as we have said, that the testimony was evidential against Costa, and thus cannot be fairly charged with a purposeful effort to prejudice the defendant, the trial judge rightly instructed the jury in the charge, though, as we think, insufficiently and at too late a time to erase the damage already done, that the evidence, including the indictments (which we will deal with presently), was to be considered only "as they affect the credibility of those individuals concerned therein" and that they were not "evidence in anywise of the guilt of the defendant."

But we do not rest our conclusion that Costa was prejudiced upon the manner of interrogation of the witnesses, although we disapprove of it. In any event we are fully persuaded that manifest prejudice to Costa resulted from the subsequent course of events at the trial. After the State closed its case the Deputy Attorney-General asked leave to reopen it for the express purpose of putting the indictments themselves in evidence with the notations thereon showing the prison terms given to and the fines imposed upon the witnesses. After a colloquy with the court during which, among other things, the Deputy Attorney-General frankly stated, "I want the record to contain as exhibits these very indictments to which they have pleaded *so that the jury may have the benefit of examining the exhibits themselves*" (italics ours), the indictments were received over defendant's objection.

Now *R. S.* 2:97–13 has always been construed by our courts as allowing the record of conviction in evidence only as an "alternative" to the development of the particulars upon oral examination of the witness. *State v. Duelks,* 97 *N. J. L.* 43 (*Sup. Ct.* 1922) ; *State v. Silver,* 101 *N. J. L.* 232 (*E. & A.* 1925), affirming 2 *N. J. Misc.* 479 (*Sup. Ct.* 1924). When the salient facts are admitted by the witness

on his oral examination, and that means of putting in the evidence is purposely adopted by the State, the record of the conviction is unnecessary for the purpose. And the error in this instance was not merely technical and of the kind which in other circumstances might be overlooked as not working to the prejudice of the defendant. In view of the identity of the offenses with that for which Costa was being tried, and the oral testimony thereof in the record which was already fraught with peril to Costa's rights, these paper writings must be categorized with those the admission of which in other cases we have said was prejudicial error, and this even though the oral testimony contained everything of substance to be gleaned from reading the indictments. *State v. Cleveland*, 6 *N. J.* 316 (1951); *State v. Cooper*, 10 *N. J.* 532 (1952). The observation that "A thing in writing carries, particularly with the layman, a weight of its own * * * [and is] a present and constant reminder to the jury of its contents" and "* * * shears the balance of the oral testimony in the case of the weight it would otherwise have," *State v. Cleveland, supra*, is particularly appropriate in the circumstances of this case. We cannot escape the conviction that the indictments very probably constituted "the fulcrum upon which the verdict turned." *Springer v. Labow*, 108 *N. J. L.* 68 (*Sup. Ct.* 1931). The manifest wrong and injury so clearly done Costa by their admission into evidence fully supports the Appellate Division's reversal of the conviction on that ground. See *State v. Mount*, 73 *N. J. L.* 582 (*E. & A.* 1906); *State v. Young*, 93 *N. J. L.* 396, at 403 (opinion following reargument) (*E. & A.* 1919).

This brings us to the propriety of the trial judge's comment in the charge upon the failure of Costa to take the stand and testify in his own defense. The charge was that "where facts concerning the acts of the defendant are testified to which *tend to prove his guilt* and he, by his oath, can deny them, his failure to testify in his own behalf raises a strong presumption that he cannot truthfully deny *those facts*." (Emphasis supplied)

■ The privilege of the accused to be a witness in his own behalf, denied at common law, was first granted by our Legislature by *Laws* 1871, *chapter* 40, *page* 12. Unlike similar statutes adopted in other jurisdictions, neither the 1871 act nor any successor legislation contains provisions prohibiting or restraining comment by the trial judge upon the failure of the accused to take the stand. Accordingly, it has been settled in our State that such comment may be made in a proper case. However, the question for the appellate court always remains whether the evidence was such as to have made any comment appropriate and whether the form of the comment, if appropriate, went beyond permissible limits. *Parker v. State*, 61 *N. J. L.* 308 (*Sup. Ct.* 1898), affirmed 62 *N. J. L.* 801 (*E. & A.* 1899) ; *State v. Wines*, 65 *N. J. L.* 31 (*Sup. Ct.* 1900) ; *State v. Twining*, 73 *N. J. L.* 3, 12 (*Sup. Ct.* 1905), affirmed 73 *N. J. L.* 683 (*E. & A.* 1906), affirmed 211 *U. S.* 78, 29 *S. Ct.* 14, 53 *L. Ed.* 97 (1908) ; *State v. Callahan*, 77 *N. J. L.* 685 (*E. & A.* 1909) ; *State v. DiBenedetto*, 82 *N. J. L.* 168 (*Sup. Ct.* 1912), affirmed 83 *N. J. L.* 792 (*E. & A.* 1912) ; *State v. Banusik*, 84 *N. J. L.* 640, 648 (*E. & A.* 1906) ; *State v. Schlosser*, 85 *N. J. L.* 165 (*Sup. Ct.* 1914), affirmed 86 *N. J. L.* 374 (*E. & A.* 1914) ; *State v. Connors*, 87 *N. J. L.* 419 (*Sup. Ct.* 1915) ; *State v. Frank*, 90 *N. J. L.* 78 (*Sup. Ct.* 1917), affirmed 91 *N. J. L.* 718 (*E. & A.* 1918) ; *State v. Schilling*, 95 *N. J. L.* 145 (*E. & A.* 1920) ; *State v. Kisik*, 99 *N. J. L.* 385 (*E. & A.* 1924) ; *State v. Boccadoro*, 105 *N. J. L.* 352 (*E. & A.* 1929) ; *State v. Lennon*, 107 *N. J. L.* 94 (*E. & A.* 1930) ; *State v. Gimbel*, 107 *N. J. L.* 235 (*E. & A.* 1930) ; *State v. Lang*, 108 *N. J. L.* 98, 104 (*E. & A.* 1931) ; *State v. Jefferson*, 131 *N. J. L.* 70, 75 (*E. & A.* 1943) ; *State v. Friedman*, 135 *N. J. L.* 414 (*Sup. Ct.* 1947), and opinion on appeal, 136 *N. J. L.* 527 (*E. & A.* 1948) ; *State v. Anderson*, 137 *N. J. L.* 6 (*Sup. Ct.* 1948) ; *State v. Edelman*, 19 *N. J. Super.* 350 (*App. Div.* 1952).

■ The presumption does not arise and such comment is ordinarily improper unless there is evidence of inculpatory

acts or conduct of the accused which, if true, must be within his personal knowledge and in some degree impute his guilt or tend to prove some element of the offense, and which facts he can disprove by his own oath as a witness if the facts be not true. *Cf. State v. Friedman, supra; State v. Anderson, supra; State v. Wines, supra.*

The earliest decision is *Parker v. State, supra.* Chief Justice Magie used language in his opinion in that case which has sometimes proved troublesome and has led to such uncertainty in the statements of the rule that Chief Justice Case was prompted to remark in his opinion in *State v. Anderson, supra,* that "Our appellate courts have not always been entirely clear in their expressions on the subject." Chief Justice Magie said that comment is proper when "the evidence tends to establish facts which, if true, *would be conclusive of his guilt of the charge against him.*" Taken from the context of the opinion this statement imports a restriction upon the situations in which comment is proper, but it seems plain to us from other language of the opinion and the facts of that case that no such restriction was intended to be laid down by the Chief Justice.

Parker was tried upon an indictment for the keeping of a disorderly house in the sale of intoxicating liquors without a license. Several witnesses testified for the State to repeated sales of liquor having been made by Parker to them and others in their presence. Parker did not take the stand. The trial judge commented in his charge, "The defendant has heard this evidence, but has remained in his seat without attempting to deny or contradict the testimony given by the state's witnesses. Neither has any other witness been called to refute it. Under the circumstances, the court submits the case for your determination."

Chief Justice Magie approved the charge, observing that a court could not sensibly be asked to "refrain from noticing that which is so plain and forcible an indication of guilt," particularly since "such an inference is natural and irresistible." "It will be drawn by honest jurymen, and no

instruction will prevent it." It should be specially noted that as the indictment was for the common law offense of keeping a disorderly house, the evidence against Parker, if believed, was of course conclusive of his guilt. It is in that light that the Chief Justice's observation, that comment may be made when "the evidence tends to establish facts which, if true, would be conclusive of his guilt of the charge against him," should be read. He was addressing himself to the facts of the case before him. That he was not laying down a rule limiting comment only to cases where there is evidence of acts of the accused which, if true, would be conclusive of his guilt, is obvious from his later remarks that the accused's "failure to offer himself as a witness when his testimony could not meet or disprove *any particular fact or circumstance*, and could only consist of a general denial of guilt, probably ought not to affect him, and, if so, his silence should not be commented on or considered." The criterion is whether there are facts in evidence concerning the acts or conduct of the ·defendant within his personal knowledge which are inculpative or imputative in some degree of guilt, which facts he by his oath can deny.

All crimes are composed of definite elements. *Cf. In the Matter of Patsy Pillo*, 11 *N. J.* 8 (1952). The crime charged to Costa in· the instant case, for example, is composed of the elements (1) knowingly keeping a place where persons might and should resort for the purpose of gambling, (2) with intent that persons might and should resort there for such purpose. There was direct testimony of inculpatory acts or conduct of Costa tending to prove both elements. The evidence that gambling took place in the garage during the period charged when the garage was in his exclusive possession and control supported the allegation that he kept a· gambling place. The evidence of his exposure day and night to what went on at the garage at that time was evidence of acts or conduct by him imputing that he knew of and permitted such gambling, and, in the surrounding circumstances, also imputing, as charged, that he

intended that persons might and should resort to the garage for the purpose of gambling. However, the jury might have viewed that evidence of his acts and conduct as establishing no more than that he knew of and permitted the gambling but as insufficient proof to convince them that he intended that persons should resort there for such purpose. In that sense, the jury's acceptance as true of the evidence of his exposure to what was going on in the garage would not necessarily be conclusive of his guilt. Clearly, however, as such evidence in the setting of the proofs viewed in their entirety plainly imputed both knowledge and intent, it was evidence of facts concerning acts or conduct of the accused which "tend to prove his guilt" under the indictment. The instruction, as was necessary, was carefully limited to apprise the jury that the presumption which might arise from Costa's failure to take the stand was merely that he could not truthfully deny "those facts." The trial judge prefaced the instruction, as was also necessary, by charging the jury that "The defendant is at all times presumed to be innocent. The burden of proving his innocence is not upon him; he is not required to show that he is innocent." and "I charge you that it is the privilege of a defendant to testify or not, as he chooses. You are not at liberty to infer guilt from his failure to give evidence."

We conclude then that there was evidence justifying the comment and that, taken with the other excerpts from the charge which have been mentioned, it was not objectionable in form.

Affirmed with direction for a new trial consistent with this opinion.

*For affirmance with the opinion*—Chief Justice VANDER-BILT, and Justices OLIPHANT, BURLING, JACOBS and BRENNAN—5.

*For affirmance in toto*—Justice WACHENFELD—1.

*For reversal*—Justice HEHER—1.