35 N.J. Super. 168 (1955)
113 A.2d 688
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN DE MEO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 25, 1955.
Decided April 28, 1955.
*169 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Charles L. Bertini argued the cause for appellant.
Mr. Myron W. Kronisch, Legal Assistant Prosecutor, argued the cause for respondent (Mr. Charles V. Webb, Jr., Essex County Prosecutor, attorney; Mr. Kronisch, on the brief).
*170 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
By this appeal defendant challenges his conviction in the Essex County Court, Law Division, for the crime of bigamy. The facts are not in dispute.
Defendant married the complaining witness, Ann Nasco DeMeo, on November 16, 1941. On June 27, 1953 he married Josephine DePasque. Both marriages took place in New Jersey. In his application for the DePasque marriage license defendant stated that he had been married before and was legally free to marry again, having been divorced on February 18, 1953 by the First Civil Court, Ciudad Juarez, State of Chihuahua, Mexico.
Defendant was indicted for bigamy, N.J.S. 2A:92-1, pleaded not guilty, and was tried. The State introduced in evidence the records of the two marriages. The first Mrs. DeMeo testified that her marriage to defendant had never been annulled and that she had never obtained a final judgment of divorce from any court. She had, however, received a copy of a final decree of divorce through the mail. The reference here was unquestionably to the mentioned Mexican divorce decree. In the course of his cross-examination of Mrs. DeMeo, defendant's attorney agreed he was not contending that she ever went to Mexico.
Defendant did not take the stand. The marriage license application mentioned above was marked in evidence. Defendant's attorney then offered in evidence an exemplified copy of the Mexican final divorce decree. The court sustained the State's objection to its admission after defendant's attorney said that he would not attempt to prove Mexican domicile because he had no such proof. The court acted on the authority of State v. Najjar, 1 N.J. Super. 208 (App. Div. 1949), affirmed 2 N.J. 208 (1949).
The jury found defendant guilty. Defendant's motion for a new trial was denied. The court thereafter sentenced him to the county penitentiary for a term of 12 months. Defendant immediately appealed.
*171 The bigamy statute, N.J.S. 2A:92-1, provides:
"Any person who, having a husband or wife living, marries another person, is guilty of bigamy and shall be punished as for a high misdemeanor.
This section shall not extend to:

* * * * * * * *
c. A person who is or shall be, at the time of such marriage, divorced by the judgment or decree of any authority or court having cognizance thereof; * * *."
Defendant agrees that the State made out a prima facie case of bigamy, and that upon a showing of the two marriages the burden was on him to bring himself within one of the exceptions of the statute. State v. Reilly, 88 N.J.L. 104 (Sup. Ct. 1915), affirmed 89 N.J.L. 627 (E. & A. 1916); and see Plainfield v. Watson, 57 N.J.L. 525 (Sup. Ct. 1895).
Defendant's first contention is that the court erred in charging the jury on the question of his failure to take the stand in his own behalf. The language objected to is:
"I charge you that the defendant in this case did not take the stand. Under our law a defendant cannot be compelled to testify, but he is competent to testify and he has the right to testify. His failure to be a witness in his own behalf raises no presumption of guilt, but if facts are testified to which tend to prove the guilt of the defendant, which facts he could by his oath deny, his failure to testify in his own behalf raises a strong presumption that he could not truthfully deny those facts."
In this connection it is to be noted that the court had previously charged:
"The defendant is presumed to be innocent, and that presumption remains with him throughout the entire trial of the case. As I have said, the defendant cannot be found guilty of the charge against him unless guilt be established beyond a reasonable doubt."
Defendant argues that the court could not properly comment on his failure to take the stand unless there were inculpatory facts within his knowledge such as he could by his oath deny, and therefore no inference could be drawn from his *172 failure to testify, citing State v. Wilson, 23 N.J. Super. 539 (App. Div. 1952). That case, properly read, does not support defendant's position.
As indicated in the Wilson case and in State v. Anderson, 137 N.J.L. 6, 7 (Sup. Ct. 1948), our courts have not always been entirely clear in defining the circumstances under which it is proper for a trial court to comment upon the failure of a defendant to take the stand in his own behalf, or in stating the nature of a proper comment when such comment is permissible. Our Supreme Court has now provided us with a clear and definite statement of the rule. In State v. Costa, 11 N.J. 239 (1953), the court considered a charge almost exactly like the one before us. It said:
"* * * such comment is ordinarily improper unless there is evidence of inculpatory acts or conduct of the accused which, if true, must be within his personal knowledge and in some degree impute his guilt or tend to prove some element of the offense, and which facts he can disprove by his own oath as a witness if the facts be not true." (at pages 253-254)
After considering the language of Chief Justice Magie in Parker v. State, 61 N.J.L. 308 (Sup. Ct. 1898), affirmed 62 N.J.L. 801 (E. & A. 1899), the court held:
"* * * The criterion is whether there are facts in evidence concerning the acts or conduct of the defendant within his personal knowledge which are inculpative or imputative in some degree of guilt, which facts he by his own oath can deny." (at page 255)
The comment of the trial court in the Costa case, taken with other excerpts from the charge mentioned in the opinion of the Supreme Court, was held not objectionable in form.
Defendant claims that the rule permitting the court to comment on his failure to take the stand does not apply in the circumstances here present because he could not truthfully deny that there were two marriages. The rule is not to be so limited; defendant may not draw strength from the obvious vulnerability of his position.
We find the charge wholly unobjectionable. The two marriages were incontestably established, and constituted facts *173 which were inculpatory. These two marriages, standing without proof of an intervening divorce of the character described in the exception contained in the bigamy statute, N.J.S. 2A:92-1(c), prima facie established defendant's guilt. If defendant wanted to escape the impact of such proof, he could have taken the stand to show that he came within the exception of the bigamy statute  i.e., he could have attempted to prove that at the time of the second marriage he was divorced from his first wife by the judgment or decree of any authority or court having cognizance thereof. Unless he took the stand, the presumption would arise that he could not truthfully deny that the second marriage was bigamous within his own knowledge. He chose to remain mute.
As in the Costa case, above, the charge was carefully limited to apprise the jury that the presumption which might arise from defendant's failure to take the stand was merely that he could not truthfully deny "those facts," viz., the two marriages. And the trial judge plainly stated, as required, that the defendant was presumed to be innocent and that the presumption remained with him throughout the entire case; that he could not be found guilty unless guilt were established beyond a reasonable doubt; that under our law a defendant cannot be compelled to testify, though he has the right to do so; and, finally, that his failure to be a witness in his own behalf raised no presumption of guilt. Contrast, in this respect, State v. Wilson, above, 23 N.J. Super., at page 542.
Much of the remainder of defendant's argument centers upon the question of whether intent is an element of the crime of bigamy under the statute. His offer in evidence of an exemplified copy of the Mexican divorce decree had, as noted above, been rejected. He claims that the decree satisfied the requirements of N.J.S. 2A:82-16 and 28 U.S.C.A., § 1738, and should have been admitted as relevant and material under the circumstances because it tended to show lack of intent to commit the crime charged. The argument is made that whether or not intent is an element of the crime of bigamy is an open question in this State, citing State v. *174 Najjar, 1 N.J. Super. 208 (App. Div. 1949), affirmed 2 N.J. 208 (1949).
The Najjar case involved a conviction for bigamy. Defendant there, as here, contended he acted in good faith and in the belief that his Mexican divorce was valid, and that the statute should therefore be construed to afford him a defense on the basis of lack of guilty knowledge. The court held that the good faith of a defendant or his honest belief in the validity of a divorce decree does not help him in a bigamy prosecution, where the divorce was one which was without force in New Jersey because rendered by a tribunal which had no jurisdiction over the parties. The court pointed out that the statute, N.J.S. 2A:92-1, did not mention good faith or guilty knowledge. It found the overwhelming weight of authority to be that in a prosecution for bigamy under an enactment containing exceptions in favor of persons lawfully divorced, a bona fide belief that a legal divorce had been granted, afforded the accused no defense. The Mexican mail order decree was held a nullity. Cf. Tonti v. Chadwick, 1 N.J. 531 (1949). The court in the Najjar case concluded that, without expressing any opinion as to the availability under other factual situations of a defense resting upon the alleged absence of criminal intent, it was satisfied, in the light of the uncontroverted facts presented to the trial judge, that he properly found defendant had committed bigamy. In view of that decision, unanimously affirmed by the Supreme Court, 2 N.J. 208 (1949), it was not error for the trial court here to refuse to admit in evidence defendant's Mexican divorce decree when he expressly conceded he had no intention of establishing that defendant was domiciled in Mexico when the decree was granted, and where it was undisputed that the first Mrs. DeMeo had never been in that country.
Objection is taken to a supplemental charge, given by the court to the jury when it returned to ask two questions: (1) Should it consider defendant's intent to commit a crime, and (2) Could it return a verdict of not guilty if, through inference, it believed that defendant firmly believed himself to be divorced at the time of his second marriage? The *175 answers given by the court to these questions were: (1) "Intent is always an element in a criminal act, and you should consider what the defendant's intent was in this act"; and (2) "I charged you heretofore that an inference is a logical deduction from a proven fact, and I suggest to you that you consider the facts in this case and consider what facts there are which would lead this defendant to firmly believe himself to be divorced in this case excepting the one fact in the application for the marriage license, which is there without anything else." The court instructed the jury to consider these answers in connection with all the rest of the charge.
In its main charge the court had left the jury free to consider all of the facts in the case, and had specifically stated that it was the ultimate judge of the facts.
Intent, in this case, had two aspects. The first was that projected by defendant when he attempted to show reliance on the Mexican divorce. In this sense intent, as shown by the Najjar decision, was not a pertinent element in the case. The State did not venture into this area; it offered no evidence of defendant's intent in connection with the divorce, but simply established a prima facie case under the bigamy statute. Intent, in its first aspect, not properly being part of the case, the supplemental charge was not prejudicial to defendant.
The other aspect of intent is that which inheres in all criminal prosecutions, namely, the necessary intent on the part of a defendant to commit the act enjoined by law. In our view the first question put by the jury, and the court's answer thereto, clearly had reference to intent in its second aspect. Intent, in that sense, is normally presumed when a defendant is shown to have committed the prohibited act  here, marriage to another person while the first spouse is still living.
Finally, defendant claims it was for the jury and not for the court to determine whether he held a judgment or decree of divorce "of any authority or court having cognizance thereof." Under this theory the rejection of his offer in *176 evidence of the Mexican divorce decree was error, since it was relevant and material under the circumstances, citing N.J.S. 2A:92-1 (c).
The Najjar case makes clear that the language in N.J.S. 2A:92-1(c), "judgment or decree of any authority or court having cognizance thereof," cannot be satisfied by a judgment or decree entered by a court lacking jurisdiction based on domicile. As already mentioned, it held the Mexican mail order decree there involved to be a nullity. Accordingly, whether or not the divorce decree held by defendant was one which New Jersey would recognize as having colorable validity was a question of law for the court to determine. To decide otherwise would fly in the face of the Najjar decision.
Defendant speculates that had the matter gone to the jury it might have reached the conclusion that the Mexican decree was valid on the basis of the presumption of innocence which always attends a defendant, together with a disbelief that the complaining witness failed to go to Mexico. As for the latter, there was no testimony by that witness as to her going to Mexico or not. Furthermore, it was expressly represented on behalf of defendant that he did not contend she ever went there.
We find no substance in the argument that the validity of the Mexican decree was a jury question.
The judgment is affirmed.