**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3408-22

KAYLA SINGLETARY and DAMIAR
SUMTER, minors by their Guardian
Ad Litem, ORTISHA LIGHTY, and
ORTISHA LIGHTY, individually,

     Plaintiffs-Appellants,

v.

ACORN NJ STRAIGHT
APARTMENTS, LP, STILLMAN
PROPERTY MANAGEMENT,
GARTHCHESTER REALTY, and
MHANY MANAGEMENT, INC.,

     Defendants-Respondents.

_____

Submitted September 10, 2024 – Decided December 19, 2024

Before Judges Firko and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-3858-20.

Brazza Law, LLC, attorneys for appellants (Caesar D. Brazza, on the briefs).

Lewis Brisbois Bisgaard & Smith, LLP, attorneys for respondent Mhany Management Inc. (Colin P. Hackett, of counsel and on the brief; Georgia D. Reid, on the brief).

PER CURIAM

Plaintiffs Ortisha Lighty and her minor two children, Kayla Singletary and Damiar Sumter (collectively plaintiffs), appeal from the denial of their motion for a new trial following a unanimous no-cause jury verdict in this negligence action for mold exposure brought against defendants Acorn NJ Straight Apartments, LP, Stillman Property Management, Garthchester Realty, and Mhany Management, Inc.

Plaintiffs claim cumulative trial errors produced an unjust result. In that regard, plaintiffs argue (1) the jury was improperly charged with standard negligence and not the duty of a landlord; (2) the jury verdict sheet was confusing; (3) defendants improperly bootstrapped the opinions of a non-testifying physician during cross-examination; (4) defendants improperly referenced prior lawsuits and painted plaintiff as a "serial litigant"; (5) defendants improperly bootstrapped the opinions of a non-testifying physician during closing arguments to argue Lighty was "lying" about the cause of injuries; (6) defendants improperly used the adverse inference charge; and (7) defendants called Lighty a "liar" and "shameful" during closing argument.

A-3408-22

Before the trial court, plaintiffs raised three claims: (1) the improper jury charge regarding the landlord's duty; (2) the verdict sheet was confusing; and (3) the jury heard several remarks made by defense counsel which were prejudicial and capable of producing an unjust result.

Having reviewed the record on appeal, we conclude there was no miscarriage of justice, and the court properly exercised its discretion. We, therefore, affirm the June 23, 2023 order denying plaintiffs' motion for a new trial.

I.

We recite the facts from the three-day jury trial held in May 2023. Numerous exhibits were admitted in evidence. We limit our summary of the evidence adduced at trial to plaintiffs' trial error claims.

A. Orisha Lighty

Lighty testified she and Damiar moved into a two-bedroom, one bathroom apartment in 2009 shortly after the building was completed. Kayla was born shortly thereafter. After residing in the apartment for a few years, the bedroom windows leaked water into the apartment during rain. Consequently, she often made verbal complaints to MHANY, followed by emails or text messages to MHANY's Executive Director Ismene Speliotis.

According to Lighty, beginning in 2019, she and her children began to experience health issues. Lighty repeatedly went to the doctor and the hospital for breathing issues, headaches, and chest pain. Lighty's primary care physician ultimately prescribed antibiotics and an inhaler. Lighty testified that she attributed her health issues to mold exposure.

Lighty also testified mold appeared in the bedrooms and bathroom sometime in 2020. Thereafter, Lighty contacted a state inspector. She then contacted another inspector, who tested several areas in the master bedroom and bathroom and the inspector found "high levels of mold" in the apartment. Lighty claimed Speliotis declined to follow the inspector's recommendation for remediation because of the cost; however, the mold and leaky windows were remediated in December 2022.

Lighty also testified that her daughter Kayla experienced headaches, nosebleeds, and breathing issues. Kayla's pediatrician prescribed antibiotics, and allergy and headache medicine. Lighty claimed that her son Damiar, born with a congenital kidney disease that suppressed his immune system, began having a chronic rash on his torso.

On cross-examination, Lighty denied that she was a former smoker but admitted that she smoked hookah sometime in 2019. Regarding Damiar, Lighty

4

testified she did not know the origin of his rash, but it started sometime in 2020 and often reoccurred. When asked if a doctor told her that Damiar's rash was an endocrine disorder, Lighty replied: "No." Also, when asked if Lighty told a doctor that she believed Damiar's rash was caused by mold, she replied: "No."

Defense counsel then asked Lighty if she had filed two other personal injury lawsuits before this matter, to which plaintiffs objected. During sidebar, defense counsel stated "[s]he's a serial litigant . . . [s]he's the gift that keeps giving." The trial court sustained plaintiffs' objection and issued a curative instruction to the jury, and Lighty was instructed to disregard counsel's previous question.

B. <u>Dr. Eric Joseph</u>

In support of her negligence claim, plaintiffs presented testimony from Dr. Eric Joseph, qualified as an expert in otolaryngology — about the effects of mold on the ears, nose, and throat. Joseph explained the effects of mold on the ears, nose, and throat. Joseph stated he examined all plaintiffs on May 31, 2022.

As to Lighty, Joseph testified that he reviewed the remediation report prepared by Christopher Bravo, emergency department medical records, medical records from Lighty's primary care physician and otolaryngologist. Based on the record review and examination of Lighty, Joseph opined Lighty had chronic

bronchitis, secondary to chronic mold exposure.  On cross-examination, Joseph could not, and did not explain, two omissions from his expert report:  Lighty tested positive for cat dander, roaches, mugworts, house dust mites; and tested negative for mold or fungal allergies in May 2020.

Joseph testified that he also examined and reviewed medical records for then nine-year old Kayla.  Joseph found Kayla's exposure was "remarkably similar" to Lighty's and diagnosed Kayla with chronic rhinitis and chronic rhinosinusitis due to chronic mold exposure.[1]  Thus, Joseph opined "Kayla's chronic allergic fungal rhinosinusitis has been and continues to be directly caused by years of chronic exposure to dangerously toxic levels of aspergillus[/]penicillium-like mold."[2]  On cross-examination, Joseph did not

---

[1]  Rhinitis is inflammation of the mucous membrane inside the nose. Rhinosinusitis, also known as sinusitis, is an inflammation of the sinuses and nasal cavity.  Sinus Infection (Sinusitis or Rhinosinusitis), Yale Med., https://www.yalemedicine.org/conditions/sinus-infection-sinusitis-or-rhinosinusitis.

[2] Aspergillus and penicillium are a common mold found indoors and outdoors that can grow just from elevated relative humidity and condensation. Aspergillosis, Cleveland Clinic (Jan. 16, 2023), https://my.clevelandclinic.org/health/diseases/14770-aspergillosis;  Penicillin Allergy, Cleveland Clinic (Mar. 22, 2023), https://my.clevelandclinic.org/health/diseases/16624-penicillin-allergies.

A-3408-22

recall the medical records reviewed concerning Kayla and her records were not referenced in his expert report.

Regarding Damiar, Dr. Joseph opined that because of his "underlying immunosuppression from his chronic kidney disease" Damiar's "rash was likely caused by the exposure of contaminated water in the bathroom." On cross-examination, however, Joseph did not opine that Damiar's chronic kidney disease, or the atrophic left kidney was exacerbated due to mold. The court also sustained plaintiffs' objection that defense counsel bootstrapped the diagnosis of another doctor when Joseph was asked if he had seen in Damiar's medical record "that this rash you've been telling us about was diagnosed by a dermatologist as being CARP [(Confluent and Reticulated Papillomatosis)]."[3]

C.    Damiar Sumter

Damiar, then eighteen years old, testified that he often experienced a rash on his back and chest. When the rash appeared, Sumter took a pill, and the rash disappeared but "quickly" returned. Neither counsel posed questions to Damiar regarding the cause of the rash.

---

[3] Confluent and reticulated papillomatosis (CARP) is a rare skin condition that causes hyperpigmented, scaly papules and plaques to appear on the upper trunk and neck of young adults. Manal Alsulami, et al., Confluent and Reticulated Papillomatosis Successfully Treated with Topical Vitamin A Derivative (Hristo Dobrev ed., 2023).

A-3408-22

D.    Christopher Bravo

Plaintiffs also presented expert testimony from Bravo, a certified mold inspector.  Bravo performed a mold inspection of the areas of "primary concern" — around the windows, bathroom, and master bedroom.  In the master bedroom, Bravo found "elevated moisture levels within the drywall" and "saw heavy visible mold growth underneath the windowsill."  He recommended the removal of the windowsill and the affected drywall and insulation and dry out the structure before the reinstallation of insulation or new floors.  An air quality reading was taken in the master bedroom and a control test was conducted outdoors.

In the bathroom, Bravo saw what appeared to be "visible mold on a vent" but it was not tested.  He also observed water stains, discoloration, and visible mold growth on the wood base of the vanity.  He recommended removal of the vanity, and any affected drywall found behind it, clean the wooden surfaces and disinfect them with a special solution to remove mold and stains from the surface, bag and dispose the affected material, vacuum to pick up dead spores and debris, and then fumigate the bathroom.  Test samples were collected and

A-3408-22

forwarded for analysis, which revealed "high levels" of cladosporium found underneath the bathroom vanity.[4]

E. Ismene Speliotis

Speliotis described Mhany Management as a 501(c)(3) not-for-profit company that manages an industrial building redeveloped to provide fifty affordable housing one-, two- and three-bedroom apartments at 114-124 Straight Street in Paterson. She admitted tenants complained of rain in their apartments, but management could not identify the source of the water penetration and "struggled" with making repeated repairs. Mhany hired an architect and engineers to improve the entire façade. The leaks continued and after additional testing and repairs, the water penetration issues were resolved.

Following the jury's verdict in defendants' favor, plaintiffs moved for a new trial. On June 23, 2023, the trial court entered an order denying plaintiffs' motion in its entirety.

---

[4] Cladosporium is a common mold that can cause allergies or asthma. It is common in areas with humidity, moisture, and water damage. Jenna Fletcher, What is Cladosporium and what are its health effects? Medical News Today (June 26, 2023), https://www.medicalnewstoday.com/articles/320331.

II.

On appeal, plaintiffs reprise those arguments presented in their motion before the trial court. Plaintiff also raises three new arguments: the trial court improperly allowed defendants to bootstrap the opinions of a non-testifying physician during cross-examination, defendants improperly called plaintiff a liar and "shameful" during the closing argument, and defendants improperly referenced the adverse inference charge.

III.

Our review is guided by well-established principles. "The standard of review on appeal from decisions on motions for a new trial is the same as that governing the trial judge—whether there was a miscarriage of justice under the law." Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 522 (2011); see also Hayes v. Delamotte, 231 N.J. 373, 386 (2018); R. 2:10-1. "[A] 'miscarriage of justice' can arise when there is a 'manifest lack of inherently credible evidence to support the finding,' when there has been an 'obvious overlooking or under-valuation of crucial evidence,' or when the case culminates in 'a clearly unjust result.'" Hayes, 231 N.J. at 386 (quoting Risko, 206 N.J. at 521-22).

10

A.    Jury Instruction.

We first address plaintiffs' contention that the trial court issued an incorrect jury instruction thus warranting a new trial. Plaintiffs argue the jury was informed only as to standard negligence, and not as to the duty of a landlord pursuant to Model Jury Charge (Civil), 5.20D(A)(2). "Duty of Owner of Multi-Family House to Tenants and Others" (approved May 1997). However, at the charge conference, plaintiffs did not request that charge be given to the jury. Plaintiffs further argue the jury was not presented with evidence that the repairs were completed, only the "self-serving" testimony of Speliotis. We reject these arguments because they are not supported by the record.

In a thoughtful statement of reasons, the trial court correctly found plaintiffs did not object to the standard jury instruction regarding negligence or request the landlord's duty be charged to the jury. Additionally, plaintiffs did not explain how that charge would be different from the standard jury charge, or the lack of that charge causing a miscarriage of justice.

We review a trial court's jury charges de novo. Fowler v. Akzo Nobel Chems., Inc., 251 N.J. 300, 323 (2022). "[A]ppropriate and proper charges to a jury are essential for a fair trial." Prioleau v. Kentucky Fried Chicken, Inc., 223

11

N.J. 245, 256 (2015) (quoting Velazquez ex rel. Velazquez v. Portadin, 163 N.J. 677, 688 (2000)).

A jury charge must be read as a whole, not just the challenged portions, to determine its overall effect. Viscik v. Fowler Equip. Co., 173 N.J. 1, 18 (2002). "There is no reversible error 'where the charge, considered as a whole, adequately conveys the law and is unlikely to confuse or mislead the jury, even though part of the charge, standing alone, might be incorrect.'" Mogull v. CB Com. Real Est. Grp., Inc., 162 N.J. 449, 464 (2000) (quoting Fischer v. Canario, 143 N.J. 235, 254 (1996)). Therefore, "[i]n civil matters, the trial court should give an instruction that appropriately guides the jury on the legal basis of a plaintiff's claim or a defendant's affirmative defense, so long as there is a reasonable factual basis in the evidence to support that claim or defense." Walker v. Costco Wholesale Warehouse, 445 N.J. Super. 111, 120 (App. Div. 2016).

When a party fails to object to the jury charges, we review for plain error. State v. Singleton, 211 N.J. 157, 182-83 (2012). Plain error is error that "was 'clearly capable of producing an unjust result,' that is, whether there is 'a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Dunbrack, 245 N.J. 531, 544 (2021) (citation

12

omitted) (first quoting R. 2:10-2; then quoting State v. Funderburg, 225 N.J. 66, 79 (2016)). "Relief under the plain error rule, R[ule] 2:10-2, at least in civil cases, is discretionary and 'should be sparingly employed.'" Baker v. Nat'l State Bank, 161 N.J. 220, 226 (1999) (quoting Ford v. Reichert, 23 N.J. 429, 435 (1957)).

Following the close of the evidence and prior to the parties' summations, the court conducted a charge conference. During the charge conference, the court asked the parties if they wanted Model Jury Charge 5.10(A)(1) or (2) be given to the jury. The parties had "[n]o preference." Accordingly, the court instructed the jury that "[i]n this case, the plaintiffs have the burden of establishing by a preponderance of the evidence all the facts necessary to prove that defendants were responsible for the happening of the mold and resulting injuries."

The court utilized Model Jury Charge (Civil), 5.10A(1) "Negligence and Ordinary Care - General" (rev. Oct. 2022). Plaintiffs did not object to that instruction being charged to the jury. Having reviewed the record, we conclude there was ample competent evidence in the record for the jury to determine whether defendants were negligent regarding the mold exposure. Thus, we

discern no error, let alone plain error, warranting a new trial based on the instructions given as a whole.

B. Verdict Sheet.

Plaintiffs' contention that the verdict sheet was confusing and produced a prejudicial result lacks merit. The verdict sheet required the jury to answer the following interrogatory before proceeding to the remaining interrogatories: "Did [p]laintiffs establish by preponderance of the evidence that [d]efendants were negligent in the maintenance of their property to cause mold?" The jury unanimously marked the verdict sheet "no," stopped as instructed by the verdict sheet, and returned the verdict.

In rejecting plaintiffs' contentions, the trial court concluded "[t]he [c]ourt is not the decider of fact, but the jury, and the [c]ourt here finds that [p]laintiff[s] ha[ve] not provided any argument as to a clear error committed by the jury, especially with a unanimous verdict." We agree.

A "jury verdict is entitled to considerable deference[.]" Risko, 206 N.J. at 521. "On a motion for a new trial, all evidence supporting the verdict must be accepted as true, and all reasonable inferences must be drawn in favor of upholding the verdict." Boryszewski ex rel. Boryszewski v. Burke, 380 N.J. Super. 361, 391 (App. Div. 2005). In reviewing a decision on a motion for a

A-3408-22

new trial, we give "due regard to the opportunity of the jury to pass upon the credibility of the witnesses," R. 4:49-1(a), and "'due deference' to the trial court's 'feel of the case.'" Risko, 206 N.J. at 521-22 (quoting Jastram v. Kruse, 197 N.J. 216, 230 (2008)).

The "verdict sheet constitutes part of the trial court's direction to the jury, defects in the verdict sheet are reviewed on appeal under the same 'unjust result' standard of Rule 2:10-2 that governs errors in the jury charge." State v. Galicia, 210 N.J. 364, 388 (2012) (quoting State v. Wilder, 193 N.J. 398, 418 (2008)). Having reviewed the record, including the judge's instructions to the jury, we are satisfied the judge did not err in submitting the verdict sheet to the jury as worded. Plaintiffs' contention that the wording was confusing to the jury is speculative and is inconsistent with their position at trial, where they agreed to the charge. The jury was asked to determine the critical issue — whether defendants negligently maintained the apartment to cause mold. After considering the evidence, the jury unanimously determined plaintiffs did not meet their burden. On this record, we are satisfied the verdict sheet was straightforward, not confusing, or prejudicial. Therefore, we conclude the court properly denied plaintiffs' motion for a new trial.

A-3408-22

C.    Alleged Prejudicial Remarks.

On appeal, plaintiffs reprise the same arguments that were rejected by the trial court regarding alleged prejudicial remarks made by defense counsel during summation.  The record shows the court first explained the inaccuracy of plaintiffs' argument regarding the sidebar colloquy.  We agree with the trial court that the record shows defense counsel did not call Lighty a serial litigant and liar before the jury.  After the court sustained plaintiffs' counsel's objection to defense counsel's question to Lighty regarding two prior lawsuits, the court instructed the jury to "to disregard the mention of any prior litigation" and Lighty was instructed not to answer the question.

Next, the court rejected plaintiffs' argument that defense counsel "shouted that [p]laintiff was the 'gift that keeps on giving'" while counsel was at sidebar.  The court noted defense counsel did not raise his voice and plaintiffs' counsel did not request that the jury be questioned if they heard the comment.

We accord substantial deference to a trial judge's evidentiary rulings. State v. Morton, 155 N.J. 383, 453 (1998).  We review a trial judge's evidentiary rulings for abuse of discretion.  Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371-72 (2011).  An abuse of discretion arises when a "decision [was] made without a rational explanation, inexplicably departed from

16

established policies, or rested on an impermissible basis." <u>U.S. ex rel. U.S. Dep't of Agric. v. Scurry</u>, 193 N.J. 492, 504 (2008) (alteration in original) (quoting <u>Flagg v. Essex Cnty. Prosecutor</u>, 171 N.J. 561, 571 (2002)). "[W]e will reverse an evidentiary ruling only if it 'was so wide off the mark that a manifest denial of justice resulted.'" <u>Griffin v. City of E. Orange</u>, 225 N.J. 400, 413 (2016) (quoting <u>Green v. N.J. Mfrs. Ins. Co.</u>, 160 N.J. 480, 492 (1999)).

We have considered the breadth of plaintiff's remaining arguments in view of the record provided on appeal and conclude they lack sufficient merit to warrant further discussion in a written opinion, <u>R.</u> 2:11-3(e)(1)(E), beyond the brief remarks that follow.

Having considered plaintiffs' contentions in view of sidebar and the applicable law, we discern no reason to disturb trial court's evidentiary decision. We conclude the trial court properly exercised its discretion related to plaintiff's objections to defense counsel's line of questioning.

D.    <u>Bootstrapping and Closing Argument</u>.

Plaintiffs raise three new arguments for the first time on appeal. We usually decline to consider new arguments that are raised for the first time on appeal. <u>Nieder v. Royal Indem. Ins. Co.</u>, 62 N.J. 229, 234 (1973). Nonetheless, for the sake of completeness, we address and reject plaintiffs' arguments.

A-3408-22

First, plaintiffs argue defense counsel bootstrapped the opinion of Damiar's physician through Joseph's cross-examination and during closing argument. Plaintiffs conflate the record. The trial court permitted testimony that Joseph did not offer an opinion on Damiar's chronic kidney disease, or the atrophic left kidney was exacerbated due to mold, and precluded testimony whether a dermatologist diagnosed Damiar with CARP. Accordingly, we find no abuse of discretion in the trial court's evidentiary ruling.

Next, plaintiffs argue defense counsel made two prejudicial remarks during closing argument. First, plaintiffs argue defense counsel "brazenly" disregarded the court's order by stating Joseph testified on direct examination that he reviewed all Damiar's medical records. And then stated: "Did you see these records, [d]octor, where the rash was diagnosed, as being something[,] we need to know, did you see that? That's what they do. Because they're a doctor, and asked did you see those records where the rash was diagnosed." Plaintiffs made no objection to that statement.

Second, plaintiffs contend defense counsel argued "[Lighty] was 'shameful!' because she used her children to 'further her litigious nature.'" Plaintiffs misstates the record. Defense counsel argued plaintiffs chose not to force Kayla to testify for her own sake but stated "[s]o what I say to Kayla, and

I'll leave it at this, I'm no one's judge, but what I say is shame, shame." The court immediately issued a curative instructive to the jury that counsel's comments were argument and not evidence. The court also charged the jury that "[w]hile you may consider their comments, nothing that the attorneys say is evidence, and their comments are not binding upon you." Therefore, we conclude there was no plain error, and a new trial is not warranted based on the curative instruction followed by the proper jury charge.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION